Filed 6/3/14 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOSE SAUL JANDRES,<br><br>    Defendant and Appellant. | H039079<br>(Santa Clara County<br>  Super. Ct. Nos. C1066714, CC948103,<br>                        CC950200, CC954983)<br><br>ORDER MODIFYING OPINION |

BY THE COURT:

It is ordered that the opinion filed herein on May 20, 2014, be modified as follows:

Page 10, first paragraph, last sentence, replace "robbery" with "burglary," the sentence will now read:

Defendant testified that he was arrested by police immediately after that burglary, only a few blocks away.

There is no change in the judgment.

Dated:_____          _____
                                                                   Premo, J.

_____          _____
           Rushing, P.J.                                      Elia, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSE SAUL JANDRES,<br><br>    Defendant and Appellant. | H039079<br>(Santa Clara County<br> Super. Ct. Nos. C1066714, CC948103,<br>               CC950200, CC954983) |

Defendant Jose Saul Jandres appeals from a judgment of conviction entered on jury verdicts finding him guilty of forcible rape with a kidnapping enhancement (Pen. Code, §§ 261, subd. (a)(2), 667.61, subds. (a), (d)); kidnapping to commit rape (*id*., § 209, subd. (b)(1)); and felony false imprisonment (*id*., §§ 236, 237).  On appeal from the judgment, defendant claims the court erred by (1) admitting evidence of an uncharged act; (2) improperly instructing the jury; and (3) failing to strike defendant's conviction for false imprisonment, a lesser included offense of kidnapping for rape, of which defendant also was convicted.  Defendant also asserts four claims of ineffective assistance of counsel.

We conclude the trial court erred by admitting the uncharged act evidence and by not adequately instructing the jury in various regards.  We need not reach defendant's ineffective assistance of counsel claims because the cumulative effect of the court's errors was prejudicial to defendant, requiring reversal of the jury verdicts.  Defendant's conviction for false imprisonment must be vacated for the additional reason that he cannot be convicted of both kidnapping for rape and its lesser included offense of felony false imprisonment.  Thus, we reverse the judgment and remand the matter for retrial.

# I.    FACTUAL AND PROCEDURAL BACKGROUND

## A.    *Defendant Pleads No Contest to Burglaries and Related Charges in 2009*

Between July and September of 2009, three felony complaints were filed in Santa Clara County Superior Court charging defendant with a number of residential burglaries and related offenses.

First, on July 2, 2009, the district attorney charged defendant with three counts of first degree burglary (Pen. Code, §§ 459, 460, subd. (a)) for three separate incidents in June 2009.  In connection with those burglaries defendant also was charged with attempted kidnapping of Madeline Doe (*id*., §§ 664, 207, subd. (a)); misdemeanor resisting, delaying or obstructing a police officer (*id*., § 148, subd. (a)(1)); and giving a false name to a peace officer (*id*., § 148.9).

Second, on July 24, 2009, the district attorney charged defendant with one count of first degree burglary (Pen. Code, §§ 459, 460, subd. (a)), allegedly committed on July 25, 2008.

Third, on September 11, 2009, the district attorney charged defendant with one count of first degree burglary (Pen. Code, §§ 459, 460, subd. (a)), allegedly committed on March 17, 2009.

Pursuant to a negotiated plea agreement, defendant pleaded no contest to all of the foregoing charges on December 10, 2009, in exchange for a six-year 10-month prison sentence.

## B.    *Defendant is Charged with Raping Adriana Doe and Related Offenses*

On January 21, 2010, before defendant had been sentenced pursuant to his 2009 plea agreement, the district attorney filed a new complaint charging defendant with raping Adriana Doe on March 20, 2009, among other offenses.  The felony complaint charged defendant with four counts in connection with the alleged rape:  (1) forcible rape (Pen. Code, § 261, subd. (a)(2)); (2) kidnapping to commit rape (*id*., § 209, subd. (b)(1)); (3) criminal threats (*id*., § 422); and (4) false imprisonment by violence or menace (*id*.,

2

§§ 236, 237). In connection with count 1, the complaint alleged that, prior to the commission of the forcible rape, defendant kidnapped Adriana Doe, and that this movement substantially increased the risk of harm to her over and above the risk of harm inherent in the charged offense. (*Id*., § 667.61, subds. (a), (d).)[1]

### C. Suspensions of Criminal Proceedings Pursuant to Penal Code Section 1368 and Defendant's Not Guilty Plea

The criminal proceedings against defendant were twice suspended pursuant to Penal Code section 1368 on concerns that he was not competent to stand trial. First, in October 2010, the trial court found defendant incompetent, suspended the proceedings, and committed defendant to the Department of Mental Health for placement. The court later found defendant restored to mental competency, and defendant pleaded not guilty to the rape and related charges. On February 14, 2012, defense counsel declared a doubt regarding defendant's competency, and the trial court again suspended the proceedings. The court subsequently found defendant competent to stand trial on August 15, 2012.

### D. Pretrial Hearings Regarding Admissibility of Evidence of Madeline Doe's Attempted Kidnapping

In a pretrial motion, the prosecution sought to introduce at trial Madeline Doe's testimony about defendant's attempt to kidnap her in June 2009, when she was 11 years old. The prosecution asserted that the testimony was admissible as sexual offense propensity evidence under Evidence Code section 1108[2] and to demonstrate intent, absence of mistake, and lack of victim consent under section 1101, subdivision (b).

---

[1] The complaint asserted three additional counts--for assault with intent to commit rape during the commission of first degree burglary (Pen. Code, § 220, subd. (b)); first degree robbery (*id*., §§ 211, 212.5, subd. (a)); and false imprisonment by violence or menace (*id*., §§ 236, 237)--based on an alleged June 2, 2009 assault of Maria Doe. Those three counts were dismissed for insufficient evidence at the prosecution's request on October 11, 2012.

[2] All further unspecified statutory references are to the Evidence Code.

Defendant moved in limine to exclude Madeline Doe's testimony, arguing that it was not admissible under either section 1108 or section 1101, subdivision (b). As to section 1108, defendant urged that the attempted kidnapping was nonsexual. Defendant also moved to exclude Madeline Doe's testimony as more prejudicial than probative under section 352.

The court first considered the admissibility of Madeline Doe's testimony at an October 2, 2012 hearing. The prosecution argued that the testimony was admissible as sexual offense propensity evidence under section 1108 because defendant had put his finger in the girl's mouth during the incident, demonstrating sexual intent. The prosecutor erroneously told the court that swabs taken from Madeline's cheek had revealed "a mixture" of both Madeline and defendant's DNA. Defendant's counsel failed to object or inform the court that, in reality, it was a swab from defendant's palm that contained Madeline and defendant's DNA. (As discussed below, the apparent confusion about the DNA evidence persisted throughout trial.) Instead, the defense countered that defendant had a nonsexual reason for putting his finger in Madeline's mouth--namely, to get her to stand up. The court stated it was "not persuaded" that Madeline's testimony was admissible under section 1101, subdivision (b), and requested further briefing regarding its admissibility as sexual offense propensity evidence under section 1108.

The court again heard argument on the issue of Madeline's testimony on October 11, 2012. At that hearing, the prosecutor argued that defendant's conduct with Madeline constituted a "sexual offense" within the meaning of section 1108 because it violated Penal Code section 647.6, which prohibits annoyance or molestation of a child under the age of 18 motivated by an unnatural or abnormal sexual interest in the child. The prosecutor opined that "there's really not any other explanation" for "defendant putting his finger inside the mouth of this 11-year-old child" "other than it's an intimate sexual conduct." Defense counsel responded that the facts did not support an inference that defendant was motivated by an unnatural or abnormal sexual interest in the child, again

4

claiming defendant hooked his finger in Madeline's cheek to make her stand up.

The court ordered a section 402 hearing to determine the admissibility of Madeline's testimony. The evidentiary hearing was held the day after the trial began outside the presence of the jury. Madeline, then 15 years old, testified that on June 30, 2009, she was lying on the couch in her grandmother's house when a man broke in. She stated that he sat down next to her, "told [her] that he knew people in the house[, a]nd then he, kind of, like, clapped--his hands went into my mouth. He tried to put his hands over my mouth. And he picked me up." When asked whether the man had put his finger in her mouth, Madeline answered "yes," explaining that he put his "finger inside my cheek" and "[l]ike, scratch things out of my cheek and take it out and put it over my mouth and picked me up and walked across the dining room." Madeline testified that when the man picked her up and began carrying her "like a baby" she screamed, and he dropped her after carrying her about eight feet. The man then ran out of the house. Madeline identified defendant as the man who broke into her grandmother's house.

After hearing Madeline's testimony, the court ruled that it was admissible under section 1108 "as evidence of sexual offense," reasoning that "touching an 11-year-old, picking that person up and carrying them towards existing [*sic*] the room clearly has sexual intent to it and, therefore, is a proper basis as 1108 evidence." The court refused to exclude the testimony under section 352, concluding that Madeline's testimony would not cause "any confusion of issues, undue consumption of time, nor does the prejudice outweigh the probative value."

### E.  *Evidence Adduced at Trial*

#### 1.  *Adriana Doe*

Adriana Doe testified for the prosecution that in March of 2009, she was 18 years old, four-feet 11-inches tall, and weighed 140 pounds. On the evening of March 20, 2009, she drank with friends. Initially, she testified that she drank beer. On cross examination, she acknowledged having a 40-ounce beer and "four to five Smirnoffs"

5

with her friends before leaving to walk to her uncle's house. On the way to her uncle's, Adriana stopped at Marina Foods and 7-Eleven. She first testified that she "couldn't buy" alcohol at Marina Foods, but later testified that she bought a 40-ounce beer there and drank it while she walked to a nearby 7-Eleven store, where she bought two 24-ounce beers. Adriana drank those two beers as she continued walking to her uncle's home. Adriana acknowledged that she had previously told police she was walking to her "home girl's house," and explained that the girl and her uncle lived in the same house.

Adriana testified that a man spoke to her in Spanish when she was near the 7-Eleven, and that she ignored him and kept walking. Later, when Adriana was near Haga Drive, a man grabbed her from behind. She testified that she did not remember if it was the same man who spoke to her earlier. Adriana screamed and struggled to get away. The man picked her up and took her two or three houses down the street to a dark, grassy area between two homes. He tried to cover her mouth and threatened to kill her if she was not quiet. After dropping Adriana on the grass, the man removed her sweatpants, which ripped on the side pocket as she tried to hold them up. He inserted his penis into Adriana's vagina for what she estimated at trial was five minutes. At some point the man slapped her. The man stopped and ran off when a police officer arrived.

Following the assault, Adriana avoided the investigating detective because she wanted to "leave it all behind."

Adriana admitted to three prior arrests--one for stealing from Safeway in 2008, and had two later arrests for petty theft.

### 2. *Officer Mario Martinez*

San Jose Police Officer Mario Martinez testified that at approximately 11:45 p.m. on March 20, 2009, he responded to a report of a woman screaming for help on Haga Drive. When he arrived in the area of the call he heard Adriana screaming and found her at the side of 3239 Haga Drive. She was sitting on the grass crying; her pants were off. She told Officer Martinez "he raped me, he raped me."

6

Officer Martinez accompanied Adriana to the hospital.  There, she told him that she had never met the man who raped her, but that he was the same man who had spoken to her in Spanish earlier on her walk.  She also told him that the man had forcibly removed her sweatpants, ripping the left side pocket of the pants.  The sweatpants, which were torn at the left pocket, were introduced into evidence at trial.  Adriana told Officer Martinez that she had pain on the right side of her face where the man had slapped her, and on her right arm and in her vaginal area.  Officer Martinez testified that Adriana smelled of alcohol, but that she did not appear to be "intoxicated to the point she couldn't care for herself."

### 3. *SART Nurse Emily Trenado*

At the hospital Adriana underwent a sexual assault examination (SART) performed by SART nurse Emily Trenado.  Nurse Trenado testified that Adriana occasionally drifted off to sleep during the exam, possibly due to intoxication, but that she was not too intoxicated to consent to the exam.

Adriana told Nurse Trenado that the rapist had slapped her with a closed hand on her right cheek.  According to Nurse Trenado, Adriana also said that she yelled for help and that the man put his hand over her mouth.

Nurse Trenado observed the presence of nine injuries on Adriana's body, one of which Adriana said was a preexisting bruise.  The other injuries included abrasions to the right and left forearms and the right knee.  In connection with her examination of Adriana's head and face, Nurse Trenado recorded the presence of an abrasion and two complaints of tenderness.  During the vaginal exam, Nurse Trenado noted redness but no trauma to the posterior forchette, the most common area where forced-penetration injuries occur.  Nurse Trenado opined that the SART exam was consistent with sexual assault.

Nurse Trenado took four vaginal swabs from Adriana and drew her blood.  Craig Lee, a forensic scientist for the Santa Clara County District Attorney Crime Laboratory,

7

testified that defendant's DNA profile was identified on the vaginal swabs taken from Adriana. The parties stipulated that the Santa Clara County District Attorney Crime Laboratory's analysis of Adriana's blood sample reflected a blood alcohol level of 0.283 percent.

### 4.    Detective Brian Alexander

San Jose Police Detective Brian Alexander testified that he was assigned to investigate the Adriana Doe case. He did not interview Adriana until June of 2009, three months after the assault, because he had difficulty contacting her. He testified that she was afraid to talk about the incident and was emotional. Adriana told Detective Alexander that a man tried to get her attention as she was walking and that she ignored him. According to Detective Alexander' testimony, Adriana told him that the man who spoke to her was the same one who grabbed her, pulled her into a side yard, and sexually assaulted her without her consent.

### 5.    Madeline Doe's Testimony Under Section 1108

Madeline testified for the prosecution about the June 30, 2009 break-in and attempted kidnapping. She identified defendant as the man who came into her grandmother's house, picked her up, and carried her about eight feet before dropping her and running out. She testified that, before picking her up, defendant "shoved" his index finger in her mouth and scratched the inside of her cheek for 15 or 20 seconds.

### 6.    Crime Laboratory Supervisor Alice King

Alice King, a supervisor at the Santa Clara County District Attorney Crime Laboratory, testified for the defense as an expert witness on the effects of alcohol on the human body. Based on Adriana's blood alcohol level of 0.283 percent, King testified that Adriana's blood alcohol content three-and-a-half hours before her blood was drawn-- at the time of the alleged rape--would have been approximately 0.35 percent. King testified that coma and death can result from a blood alcohol content of 0.38 percent or higher.

8

### 7. *Roberto and Carmen Fernandez*

Officer Martinez found Adriana in the side yard of 3239 Haga Drive, where Roberto and Carmen Fernandez live. Roberto Fernandez testified for the defense that he arrived home at 11:20 p.m. in March of 2009. A few minutes later, he was outside his home smoking and saw police arrive. Mr. Fernandez testified that he had not heard any screaming prior to the police arriving.

Carmen Fernandez testified that she was in bed sometime after 11:30 p.m. that same night when she heard what sounded like someone jumping and falling near the fence and garbage cans outside her home. She testified that she had not heard any screaming.

### 8. *Defendant*

Defendant, a Spanish speaker, testified on his own behalf with the assistance of an interpreter. Defendant was not able to spell his name and did not know his exact age, but estimated that he was about 24 years old. Defendant testified that he was born in Central America. In March 2009 he was homeless and often spent time at Marina Foods in San Jose, where he could get drugs, including "crystal, rock, [and] marijuana." Defendant stated that he met Adriana at Marina Foods, and that they occasionally drank alcohol and used marijuana together. According to defendant, he and Adriana had consensual sex on approximately three occasions. On the last occasion, Adriana offered to have sex with defendant for $20. He agreed and they had sex in an abandoned house. Afterwards, defendant did not have the money, and Adriana threatened to say defendant forced her into having sex. Defendant denied ever raping Adriana.

With respect to Madeline Doe, defendant testified that he broke into the house where he encountered her looking for "money, ipods, computers, [and] game consoles" that he could trade for drugs. Defendant testified that Madeline yelled when she saw him and that he covered her mouth to keep her quiet. He then lifted her up, planning to take her outside so that he could come back inside and steal. Defendant denied ever sticking

9

his finger in Madeline's mouth. He explained that he dropped Madeline when he heard someone else in the house. After running out, he broke into a home a few doors down where he stole a computer, money, and other items. Defendant testified that he was arrested by police immediately after that robbery, only a few blocks away.

On cross-examination, the prosecutor asked defendant to explain how his DNA ended up in Madeline's mouth. Defendant had no explanation, continuing to deny ever putting his finger in her mouth. Also on cross-examination, defendant stated that he did not recall being asked by police officers about having sex with women. He testified that he "[p]robably" would have denied ever having sex because he does not "like people to ask . . . questions in regard to sex," and his answer to such questions is "always" that he has never had sex.

### 9. Detective Anthony Serrano

The prosecution called San Jose Police Detective Anthony Serrano as a rebuttal witness. Detective Serrano testified that he interviewed defendant on January 7, 2010, with the help of a Spanish language translator. After explaining the nature of DNA to defendant, Detective Serrano asked defendant to explain why his DNA had been found in the vagina of a woman who had been sexually assaulted. According to Detective Serrano, defendant denied having sex with any women while in the United States and could not explain the presence of his DNA.

### 10. Crime Laboratory Forensic Scientist Craig Lee

The People's final rebuttal witness was Craig Lee, a forensic scientist with the Santa Clara County District Attorney Crime Laboratory. Lee performed DNA analysis in connection with defendant's attempted kidnapping of Madeline Doe. He testified that DNA from defendant's hands included at least three contributors, and that Madeline was a "possible" contributor. On cross-examination, defense counsel asked whether Lee had found at least three possible contributors of DNA on "the swab that was from the inside of [Madeline's] cheek." Lee responded "No, that's not true. That is from the palm . . .

10

[defendant's] palm swabs . . . Not from any of the reference samples." Lee had previously confirmed that the DNA sample from Madeline was a "reference sample."

### F. Jury Instructions and Closing Arguments

The trial court instructed the jury as follows regarding evidence of the attempted kidnapping of Madeline Doe:

"CALCRIM [No.] 1191. Evidence of uncharged sex offense. The People presented evidence that defendant committed an uncharged crime, attempted kidnapping of Madeline Doe. You may consider this evidence of uncharged conduct only if the People have proved by a preponderance of the evidence that the defendant, in fact, committed the uncharged offense. [¶] Proof by preponderance of the evidence is a different burden of proof from proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not the fact is true. If the People have not met this burden of proof, you must disregard this evidence entirely. [¶] If you decide that the defendant committed the uncharged offense, you may but are not required to conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses and, based on that decision, also conclude that the defendant was likely to commit the charged crimes. [¶] If you conclude that the defendant committed the uncharged offense, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of the charged crimes. The People must still prove each charge beyond a reasonable doubt."

In his closing argument, the prosecutor told the jury that "evidence of Madeline Doe's attempted kidnapping" was introduced "because the law allows you to hear about prior sexual offenses." He stated that while "[t]he instruction on the prior offense says that you have to believe that's proved by a preponderance of the evidence," the jury did not need "to worry about the level of proof" "because the defendant sat here and told you and admitted that he was convicted of that offense. So the facts related to Madeline Doe

11

have been proved beyond a reasonable doubt." Despite Lee's testimony to the contrary, the prosecutor also stated that "we have DNA proof" that defendant put his finger in Madeline's mouth. Finally, he told the jury that "it [was] entirely up to [them]" to decide "how [to] use [the Madeline Doe evidence] in this case," and that they could use it to "conclude that the defendant had the propensity to commit the crimes with which he's charged in this case."

### G. Verdict

The jury returned its verdict on October 24, 2012, finding defendant guilty of forcible rape as charged in count 1 (Pen. Code, § 261, subd. (a)(2)); kidnapping to commit rape as charged in count 2 (*id*., § 209, subd. (b)(1)); and felony false imprisonment as charged in count 4 (*id*., §§ 236, 237). In connection with count 1, the jury found true the enhancement allegation that prior to the commission of the rape defendant kidnapped the victim and that this movement substantially increased the risk of harm to the victim (*id*., § 667.61, subds. (a), (d)). The jury acquitted defendant of the count 3 criminal threats charge (*id*., § 422).

### H. Sentencing

On November 30, 2012, the trial court sentenced defendant to 25 years to life on the count 1 forcible rape conviction with the kidnapping enhancement. The court also imposed, but stayed, sentences on the count 2 kidnapping to commit a sex offense conviction and count 4 false imprisonment conviction. Those sentences were for seven years to life and two years, respectively.

In the 2009 plea bargain cases, the court imposed the six year, 10 month sentence called for by defendant's plea bargain, and ordered that term to run consecutive to the sentence in the jury trial case.

## II. DISCUSSION

### A. Admissibility of Evidence of Madeline Doe's Attempted Kidnapping as Sexual Assault Propensity Evidence

Defendant challenges the admission of Madeline Doe's testimony and the related DNA evidence. We agree that the trial court erred in admitting that propensity evidence.

#### 1. Governing Legal Principles and Standard of Review

Section 1108 is an exception to the general prohibition against admitting character evidence to prove criminal disposition or propensity. (See § 1101, subd. (a); *People v. Falsetta* (1999) 21 Cal.4th 903, 911 (*Falsetta*).) In a sexual offense prosecution, the statute permits the admission of evidence that the defendant "committed other sexual offenses to prove his propensity to commit the charged sexual offense[]," so long as the evidence is admissible under section 352.[3] (*People v. Cottone* (2013) 57 Cal.4th 269, 281; see also § 1108, subd. (a).) The statute defines "sexual offense" as "a crime under the law of a state or of the United States," including "conduct proscribed by Section . . . 647.6, of the Penal Code." (§ 1108, subd. (d)(1)(A).) If a defendant's "uncharged conduct is not within the statutory definition [of 'sexual offense']" it constitutes "inadmissible character evidence under section 1101, subdivision (a)." (*People v. Nguyen* (2010) 184 Cal.App.4th 1096, 1119 (*Nguyen*).)

Thus, the admissibility of uncharged conduct pursuant to section 1108 turns on the existence of a preliminary fact--namely, that the uncharged conduct constitutes a statutorily-enumerated "sexual offense." (See *People v. Lucas* (1995) 12 Cal.4th 415, 466 ["Sometimes the relevance of evidence depends on the existence of a preliminary fact."].) The trial court must make a preliminary determination of whether the proffered

---

[3] Section 1108, subdivision (a), provides in full: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352."

13

evidence is sufficient for the jury to find, by a preponderance of the evidence, that the defendant committed an enumerated offense. (See *People v. Cottone*, *supra*, 57 Cal.4th at p. 282 ["the trial court decides whether the charging document alleges a 'sexual offense' before it can consider admitting 1108 evidence to prove propensity"]; *People v. Garelick* (2008) 161 Cal.App.4th 1107, 1115 [the truth of the prior uncharged act is preliminary factual issue that must be decided before admitting it]; *People v. Lopez* (2007) 156 Cal.App.4th 1291, 1299 ["the more lenient preponderance of the evidence standard" applies to prior sexual offense evidence admitted under § 1108].) "The court should exclude the proffered evidence only if the 'showing of preliminary facts is too weak to support a favorable determination by the jury.' " (*People v. Lucas*, *supra*, at p. 466.) "The decision whether the foundational evidence is sufficiently substantial is a matter within the court's discretion." (*Ibid*.) Accordingly, we review the trial court's determination of this preliminary fact under the abuse of discretion standard.

If we find no abuse of discretion, we consider whether the evidence nevertheless should have been excluded under section 352 because its prejudicial effect outweighs its probative value. We also review the trial court's decision in that regard for abuse of discretion. (*Nguyen*, *supra*, 184 Cal.App.4th at pp. 1115-1116.)

> 2. *The Trial Court Did Not Err By Concluding the Jury Could Reasonably Find that the Madeline Doe Incident Constituted a Sexual Offense*

In view of the foregoing, the first question before us is whether the trial court abused its discretion by concluding that the jury could find by a preponderance of the evidence that defendant's conduct with Madeline Doe constituted a section 1108 "sexual offense."

The court did not explain how defendant's uncharged conduct satisfied the statutory definition of "sexual offense." As the People concede, attempted kidnapping is not a "sexual offense" for purposes of section 1108. Accordingly, to the extent the court

14

admitted Madeline's testimony on the understanding that evidence of a prior attempted kidnapping is proper section 1108 propensity evidence, it erred. (*Nguyen*, *supra*, 184 Cal.App.4th at p. 1119 [it is error to admit evidence of nonsexual conduct under § 1108].)

The People urge us to "presume[]" that the court agreed with the prosecution's argument that defendant's conduct constituted a "sexual offense" because it violated Penal Code section 647.6, which proscribes annoying or molesting a child under the age of 18.[4] (Pen. Code, § 647.6.) To be guilty of a violation of Penal Code section 647.6, the prosecution must prove that the defendant: (1) entered an inhabited dwelling without consent; (2) engaged in conduct directed at a child under the age of 18 years old at the time of the conduct; (3) a normal person, without hesitation, would have been disturbed, irritated, offended, or injured by the defendant's conduct; and (4) the defendant's conduct was motivated by an unnatural or abnormal sexual interest in the child. (CALCRIM No. 1122.) Defendant disputes only the fourth element, arguing that there was no evidence that his conduct was motivated by an unnatural or abnormal sexual interest in Madeline.

The question whether defendant's conduct, particularly putting his finger in Madeline's mouth, was motivated by an unnatural or abnormal sexual interest is a close one. Arguably, a jury reasonably could posit that defendant's conduct carried a sexual connotation, such that it would not have been an abuse of discretion for the trial court to permit the jury to determine whether defendant's conduct violated Penal Code section 647.6. Accordingly, assuming the court made the preliminary determination that the jury could have concluded that Madeline's testimony proved a violation of Penal Code section 647.6 by a preponderance of the evidence, it did not abuse its discretion.

---

[4] The People correctly note that, under *People v. Lopez*, *supra*, 156 Cal.App.4th 1291, the prosecution was permitted to argue that defendant's prior conduct with Madeline Doe was a sexual offense (i.e., violated Penal Code section 647.6) even though the conduct resulted in a conviction for a nonsexual offense (attempted kidnapping).

15

### 3. The Trial Court Erred By Admitting Madeline Doe's Testimony Under Section 352

"[S]ection 1108 passes constitutional muster if and only if section 352 preserves the accused's right to be tried *for the current offense*." (*People v. Harris* (1998) 60 Cal.App.4th 727, 737 (*Harris*).) "Rather than admit[ting] or exclud[ing] every sex offense a defendant commits" pursuant to section 1108, trial judges "must engage in a careful weighing process under section 352." (*Falsetta*, *supra*, 21 Cal.4th at p. 917; see also § 1108, subd. (a) [evidence is admissible under this section only "if the evidence is not inadmissible pursuant to Section 352"].) Accordingly, we must next decide whether the trial court abused its discretion by failing to exclude Madeline's testimony pursuant to section 352.

Uncharged sexual offense conduct is admissible under section 352 if its probative value is not "substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." The factors to be considered in the section 352 analysis include: "(1) whether the propensity evidence has probative value, e.g., whether the uncharged conduct is similar enough to the charged behavior to tend to show defendant did in fact commit the charged offense; (2) whether the propensity evidence is stronger and more inflammatory than evidence of the defendant's charged acts; (3) whether the uncharged conduct is remote or stale; (4) whether the propensity evidence is likely to confuse or distract the jurors from their main inquiry, e.g., whether the jury might be tempted to punish the defendant for his uncharged, unpunished conduct; and (5) whether admission of the propensity evidence will require an undue consumption of time." (*Nguyen*, *supra*, 184 Cal.App.4th at p. 1117.)

As to probative value, " '[t]he court should not permit the admission of other crimes until it has ascertained that the evidence tends logically and by reasonable

16

inference to prove the issue upon which it is offered.' " (*Harris*, *supra*, 60 Cal.App.4th at pp. 739-740.)  Put differently, the uncharged sex offense evidence "must have some tendency in reason to show that the defendant is predisposed to engage in conduct *of the type charged*." (*People v. Earle* (2009) 172 Cal.App.4th 372, 397 (*Earle*).)  It is true that " ' "[m]any sex offenders are not 'specialists,' and commit a variety of offenses which differ in specific character." ' " (*People v. Soto* (1998) 64 Cal.App.4th 966, 984.)  Nevertheless, " 'multiple sex offenses . . . may be dissimilar enough . . . that the trial court could apply the criteria of section 352 and determine that it is not proper for the jury to consider' " evidence of an uncharged offense " 'as evidence that the defendant likely committed . . . the other charged offense[].' " (*People v. Villatoro* (2012) 54 Cal.4th 1152, 1163.)

At issue in defendant's trial was whether he forcibly raped Adriana, as she testified, or had consensual sex with her, as he maintained.  Thus, the pertinent inquiry is whether evidence that defendant exhibited sexual interest in an 11-year-old girl by putting his finger in her mouth rationally supports an inference that defendant is predisposed to rape an 18-year-old woman.  Given the many differences between the two offenses--including the circumstances (daytime attempted burglary in one case, possible stalking and attack at night in the other); the ages of the victims (11 and 18); and the nature of the conduct (inappropriate touching of the mouth in one case, rape in the other)--we think not.  (See *Earle*, *supra*, 172 Cal.App.4th at pp. 396-398 [the commission of indecent exposure does not rationally support an inference that the perpetrator has a propensity or predisposition to commit felony sexual assault]; *Harris*, *supra*, 60 Cal.App.4th at pp. 740-741 ["act of inexplicable sexual violence . . . was not particularly probative of the defendant's predisposition to commit . . . 'breach of trust' sex crimes"].)

At trial, the prosecutor attempted to draw similarities between the two offenses by arguing that defendant may have intended to "take [Madeline] to the outside of the house like he did with Adriana Doe," presumably meaning defendant intended to rape

17

Madeline. While such an intent certainly would increase the probative value of Madeline's testimony, there is no evidence of such intent on defendant's behalf. And if such intent could reasonably be inferred, then the inflammatory nature of Madeline's testimony increases markedly, and weighs against its admission under section 352.

The relative strength of the two cases also is relevant to assessing the potentially prejudicial impact of the Madeline Doe evidence, as strong evidence of uncharged conduct may bolster a comparatively weak case on the charged offense. The evidence of the Madeline Doe incident was portrayed to the jury as extremely strong. They were told (erroneously) that DNA evidence proved defendant had put his finger in Madeline's mouth, as well as that defendant admitted the relevant prior offense. (While he admitted the attempted kidnapping, he did not admit any sexual intent.) The case against defendant for Adriana's rape was comparatively less strong, largely boiling down (in the People's own words) to "a credibility contest" between Adriana and defendant.

We conclude that the prejudicial effect of Madeline's testimony exceeded its comparatively low probative value. Therefore, the trial court abused its discretion under section 352 by admitting her testimony and the related DNA evidence. The erroneous admission of that evidence requires reversal only if we determine it was prejudicial. To make that determination, we must first select the appropriate standard for assessing prejudice--the harmless-beyond-a-reasonable-doubt test (*Chapman v. California* (1967) 386 U.S. 18, 24) that applies to errors violative of the United States Constitution, or the reasonable-probability test (*People v. Watson* (1956) 46 Cal.2d 818, 836-837) that applies to error under California law.[5] In general, "the application of ordinary rules of evidence like Evidence Code section 352 does not implicate the federal Constitution, and thus we

_____

[5] Neither party offers any opinion on the issue. Defendant argues that he has established prejudice under either standard. The People maintain that *if* we find any errors of federal constitutional dimension, they are harmless beyond a reasonable doubt, as *Chapman* requires.

18

review allegations of error under the 'reasonable probability' standard of *Watson*." (*People v. Marks* (2003) 31 Cal.4th 197, 227.)  In line with that general rule, courts have applied *Watson* to the erroneous admission of unduly prejudicial sexual offense propensity evidence.  (See *Harris*, *supra*, 60 Cal.App.4th at p. 741; *People v. Mullens* (2004) 119 Cal.App.4th 648, 659 ["Error in the admission or exclusion of evidence [under section 1108] following an exercise of discretion under section 352 is tested for prejudice under the *Watson* harmless error test."].)  We follow suit in our discussion of the prejudicial effect of the erroneous admission of Madeline Doe's testimony in part II. D., *post.*

### B.        *Erroneous Instructions on Sexual Assault Propensity Evidence*

Defendant contends the trial court committed a number of errors in instructing the jury regarding the Madeline Doe sexual assault propensity evidence.  We agree.

#### 1.        *Forfeiture and Standard of Review*

Defense counsel did not object to the jury instructions at trial.  " 'Generally, a party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language.'  [Citation.]  But that rule does not apply when . . . the trial court gives an instruction that is an incorrect statement of the law." (*People v. Hudson* (2006) 38 Cal.4th 1002, 1011-1112.)  As discussed below, that is the case here. We therefore address the merits of defendant's claims, as the People encourage us to do.

Errors in jury instructions are questions of law, which we review de novo.  (*People v. Guiuan* (1998) 18 Cal.4th 558, 569.)

#### 2.        *Analysis*

We conclude that the jury instructions misstated the law in three ways.  We need not consider defendant's additional contention that the trial court erred by failing to give a limited purpose instruction regarding the Madeline Doe evidence because, as discussed below, we conclude that the erroneous admission of Madeline Doe's testimony combined

19

with the other instructional errors were prejudicial and require reversal of defendant's convictions.

*First*, the court identified the "attempted kidnapping of Madeline Doe" as the uncharged sex offense from which the jury could conclude "that the defendant was disposed or inclined to commit sexual offenses and . . . likely to commit the charged crimes." As discussed above, attempted kidnapping is not a sexual offense within the meaning of section 1108. The evidence was admissible only as a potential violation of Penal Code section 647.6, and yet the court made no mention of that provision. The People concede this was error, and that the error was reinforced by the prosecutor's statement in his closing argument that "evidence of Madeline Doe's attempted kidnapping" was introduced "because the law allows you to hear about prior sexual offenses."

*Second*, because the trial court failed to identify the correct alleged sex offense, it also failed to instruct jurors on the five elements of Penal Code section 647.6, or that they needed to find the prosecution had proved those elements by a preponderance of the evidence. Most importantly, the jury was not informed that it was required to find that defendant was motivated by an unnatural or abnormal sexual interest in Madeline. This was error, as the People concede. (Judicial Council of Cal., Crim. Jury Instns. (2012) Bench Notes to CALCRIM No. 1191 ["The court **must** also instruct the jury on elements of the offense or offenses."].) The People further acknowledge that the prosecutor compounded the error in his closing argument by stating that defendant had admitted the relevant uncharged offense such that the jury did not "have to worry" about whether the elements had been proved by a preponderance of the evidence. As the People explain, "[a] reasonable juror could have interpreted the prosecutor to be arguing that the jury did not have to determine whether a preponderance of the evidence showed that appellant had committed a prior uncharged sexual offense because it had been proved beyond a reasonable doubt given that appellant had admitted being convicted of attempted

20

kidnapping. The prosecutor's suggestion was erroneous" because defendant "did not admit that he committed a sexual offense . . . within the ambit of Evidence Code section 1108."

*Third*, the court instructed the jury that it could conclude from the attempted kidnapping evidence that defendant was "likely to commit *the charged crimes*." (Italics added.) In fact, the evidence could be used to establish defendant's propensity to commit only the charged *sexual* offenses. (See Judicial Council of Cal., Crim. Jury Instns., *supra*, CALCRIM No. 1191 [requiring that jury be instructed that uncharged offense may be used to conclude "defendant was likely to commit [and did commit] *<insert charged sex offense[s]>*, as charged here"].) This error was exacerbated by the prosecutor's closing argument contention that "it [was] entirely up to [the jury]" to decide "how [to] use [the Madeline Doe evidence] in this case," and that they could use it to "conclude that the defendant had the propensity to commit the crimes with which he [was] charged."

The People argue that these instructional errors were harmless. Ordinarily, instructional error is assessed under the *Watson* reasonable probability standard. (*People v. Flood* (1998) 18 Cal.4th 470, 490.) Jury instructions that relieve "the prosecution of the burden of proving beyond a reasonable doubt each element of the charged offense violate the defendant's due process rights under the federal Constitution," and must be assessed under *Chapman*. (*Id.* at p. 491.) Defendant argues that, here, the instructional errors violated his "right to due process under the federal [C]onstitution because it 'had the effect of relieving the State of the burden of proof' on a critical question in the case, his propensity to rape Adriana Doe." We are not persuaded. Propensity was, of course, not an element of any of the charged crimes. And the instructions specified that the uncharged offense was not sufficient alone to prove the charged offenses and reminded the jury the People still had the burden to prove each charge beyond a reasonable doubt. Accordingly, "there is no reasonable likelihood the instruction on uncharged offenses relieved the prosecution of its burden of proof with respect to the charged offenses."

21

(*People v. Anderson* (2012) 208 Cal.App.4th 851, 896.)  Therefore, we shall apply the *Watson* standard to determine whether the instructional errors were prejudicial.  (See *Falsetta*, *supra*, 21 Cal.4th at p. 925 [finding erroneous failure to instruct the jury on how to use § 1108 propensity evidence to be harmless under *Watson*].)  We do so below in our discussion of the prejudicial effect of the instructional errors in part II. D., *post.*

### C.      Ineffective Assistance of Counsel Claims

Defendant contends his trial counsel's assistance was constitutionally ineffective in a number of ways.  We need not address these claims, as we conclude the errors discussed above were prejudicial, requiring reversal of defendant's convictions and remand for retrial.

### D.      Prejudice

As discussed above, the erroneous admission of Madeline Doe's testimony and the instructional errors are subject to *Watson* review, under which prejudicial error exists where it is "reasonably probable" that a result more favorable to the appealing party would have been reached in the absence of error.  (*Harris*, *supra*, 60 Cal.App.4th at p. 741.)  " '[A] "probability" in this context does not mean more likely than not, but merely a *reasonable chance*, more than an *abstract possibility.*' "  (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800.)  Accordingly, we must assess the effect of the errors we have identified to see if it is reasonably probable the jury would have reached a result more favorable to defendant in their absence.  If it is, reversal is required.

We begin with the admission of the Madeline Doe evidence.  To determine what the "jury is *likely* to have done in the absence of" that evidence, we consider the relative strength of "the evidence supporting the existing judgment" as compared to "the evidence supporting a different outcome."  (*People v. Breverman* (1998) 19 Cal.4th 142, 177.)  With respect to the rape charge, the physical evidence--including the presence of defendant's DNA on Adriana's vaginal swabs, as well as Adriana's ripped pants, injuries, and vaginal redness--was not determinative.  While that evidence may corroborate

22

Adriana's testimony, it is not necessarily inconsistent with defendant's version of events, in which the two had consensual sex. Nor is the evidence that both Officer Martinez and whoever called the police heard Adriana screaming dispositive, as it too is reconcilable with the defense theory that she set defendant up after he failed to pay her. Thus, as the People itself note, the case was "a credibility contest" between Adriana and defendant.

"In such a case, ' "any substantial error tending to discredit the defense, or to corroborate the prosecution, must be considered as prejudicial." ' " (*People v. St. Andrew* (1980) 101 Cal.App.3d 450, 465.) Here, the Madeline Doe evidence--particularly the supposed (but, in fact, nonexistent) evidence of defendant's DNA inside her mouth--was extremely harmful to defendant's credibility. Defendant denied putting his finger in Madeline's mouth, and the jury was told that DNA evidence proved that he had, and by extension, that he had lied on the stand. Recognizing that " 'scientific proof may in some instances assume a posture of mystic infallibility in the eyes of a jury,' " we must assume that the jury credited the supposed DNA evidence and in turn concluded defendant was a liar. (*People v. Kelly* (1976) 17 Cal.3d 24, 32.) Because defendant's credibility was the pivotal issue at trial, and the Madeline Doe evidence tended strongly to impeach him, its erroneous admission likely weighed heavily in the jury's determination whether defendant was guilty.

That conclusion is buttressed by the fact that the jury clearly did not believe all of Adriana's testimony. Defendant was found not guilty of the crime of criminal threats, demonstrating that the jury disbelieved Adriana's testimony that the man who attacked her threatened to kill her. That jurors harbored doubts about Adriana's credibility is confirmed by that fact that, during deliberations, they sent out the following note: "Can you tell us if Adriana Doe was in any way compelled or incentivized to testify in this case (did she receive any legal consideration in another case)?" Under these circumstances, we must conclude that it is reasonably probable that the jury would have reached a result more favorable to defendant on the rape charge in the absence of the erroneously

admitted evidence.

The prejudicial effect of the trial court's evidentiary error was compounded by the court's failure to properly instruct the jury as to the use of that evidence. As discussed above, the jury should have been informed that it could consider that evidence only if (1) it first concluded that the prosecutor had proved by a preponderance of the evidence that defendant's conduct with Madeline violated Penal Code section 647.6; and (2) even then, only in connection with the charged sexual offenses. Absent those instructions, the jury may have been left with the incorrect impression that the requisite prior sexual offense had been proved and could be considered in connection with all of the charged offenses. Indeed, the prosecutor told them as much. The jury's evaluation of the Madeline Doe evidence may well have been affected by the trial court's instructional errors.

Under the "cumulative error" doctrine, we reverse the judgment if there is a "reasonable possibility" that the jury would have reached a result more favorable to the defendant absent a combination of errors. (See *People v. Williams* (2009) 170 Cal.App.4th 587, 646; *In re Avena* (1996) 12 Cal.4th 694, 772, fn. 32 ["Under the 'cumulative error' doctrine, errors that are individually harmless may nevertheless have a cumulative effect that is prejudicial."] Here, there is a reasonable possibility that the combined impact of the evidentiary and instructional errors affected the jury's decision to convict defendant on the rape charge.

Our analysis applies equally to the kidnapping and false imprisonment convictions. Those claims also pitted the victim's credibility against that of the defendant, such that the propensity evidence was likely determinative. (See *People v. Clark* (1980) 109 Cal.App.3d 88, 93 [finding erroneous admission of expert testimony to be prejudicial under *Watson* in a "close" case in which "the victim's credibility was pitted against that of the defendant"].) And the jury was not instructed that it could not consider the Madeline Doe evidence in connection with the nonsexual false imprisonment charge.

24

### E. The Felony False Imprisonment Conviction Must Be Vacated

The People concede that defendant's conviction for false imprisonment must be vacated for the additional reason that "false imprisonment is a lesser included offense of kidnapping for rape," of which defendant also was convicted. (*People v. Shadden* (2001) 93 Cal.App.4th 164, 171.) We agree, as a defendant cannot be convicted of both an offense and a lesser offense necessarily included within that offense, based upon his or her commission of the identical act. (*People v. Sanchez* (2001) 24 Cal.4th 983, 987.)

## III. DISPOSITION

The judgment is reversed and the matter is remanded for retrial.

_____
Premo, J.

WE CONCUR:

_____
Rushing, P.J.

_____
Elia, J.

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court<br>Superior Court Nos. C1066714, CC948103,<br>CC950200, CC954983 |
| Trial Judge: | Hon. Griffin Bonini |
| Counsel for Plaintiff/Respondent:<br>The People | Kamala D. Harris<br>Attorney General<br><br>Dane R. Gillette<br>Chief Assistant Attorney General<br><br>Gerald A. Engler<br>Senior Assistant Attorney General<br><br>René A. Chacón<br>Supervising Deputy Attorney General<br><br>Bruce Ortega<br>Deputy Attorney General |
| Counsel for Defendant/Appellant:<br>Jose Saul Janders | Under appointment by the Court of Appeal<br>Julie Dunger |

People v. Jandres
H039079