Filed 9/25/25  P. v. Lacey CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE, | C100700 |
| Plaintiff and Respondent, | (Super. Ct. No. 23FE009550) |
| v. | |
| SHONE CHRISTOPHER LACEY, | |
| Defendant and Appellant. | |

Defendant Shone Christopher Lacey was charged with burglarizing a church in Sacramento County in the early morning hours one day in June 2023.  At trial, the court admitted evidence of Lacey's 2013 conviction for burglarizing a different church.  The court instructed the jury using a version of CALCRIM No. 375, which permitted the jury to use evidence of the prior conviction for the limited purposes of intent, motive, common plan or scheme, absence of mistake, and knowledge that his entry into the Sacramento church was unlawful.  The jury found Lacey guilty of burglary.

On appeal, Lacey contends that the trial court incorrectly admitted the prior conviction evidence under both Evidence Code sections 1101, subdivision (b) and 352.[1] Lacey also challenges the jury instruction, arguing that it should not have included a reference to a "common plan or scheme" because that theory was not supported by the

---

[1] Undesignated statutory references are to the Evidence Code.

1

evidence. We conclude the court correctly admitted the evidence and any error in the jury instruction was harmless. We therefore affirm the judgment.

BACKGROUND

Around 7:00 a.m. on June 24, 2023, the operations manager of a Sacramento church received a notice that an alarm had been triggered at the church, indicating someone had entered the rear door. As she was going to the church, she received two additional alarm notifications around 9:00 a.m.

The manager met sheriff's deputies at the church entrance when she arrived. When they found Lacey, he was sitting on a bench in the church's garden with a blanket over his head. A case of water from inside the church had been moved close to the exit of the garden. Lacey was wearing a lanyard that had been hanging in the senior minister's office. A search of Lacey's backpack found food items, a bottle of wine, cleaning products, a letter addressed to the church, and several checks and pay stubs that belonged to the church. The manager believed there was an unlocked door in the back area of the church that may have allowed Lacey to enter. There was also a hole in the garden fence that someone would need to squeeze into to fit through. If someone were seeking help from the church, the person would typically go to the front doors, which were generally locked. A responding deputy detained Lacey.

The People charged Lacey with one count of burglary. (Pen. Code, § 459.) The People further alleged that Lacey had a prior strike conviction for a robbery in 2010.

Before trial, the People moved in limine under section 1101, subdivision (b) to admit evidence that Lacey had been convicted of burglary in 2013. They argued that the 2013 burglary, in which Lacey had broken into a different church through a back window and taken various items, was evidence of intent, common plan or scheme, method of operation, knowledge, and absence of mistake or accident. Specifically, testimony about the prior conviction was relevant because it would show that Lacey intended to commit theft when he entered the church in the charged offense. Lacey argued that the prior

2

crime was different than the charged acts because the 2013 offense involved the theft of high-value items, not low-value items as in the charged offense.

The trial court issued a written ruling allowing the testimony. In the 2013 offense, a pastor for a West Sacramento church responded to an alarm around 5:30 a.m. and found Lacey carrying property from inside the church. The two fought before police arrived and detained Lacey. Lacey had broken into the church by removing a back window and had taken a computer, a computer monitor, tools, an amplifier, and two trash cans with items inside. The court compared the prior conviction with the charged offense, observing, "In each incident, defendant activated the alarm system for both churches. Both intrusions occurred in the early morning hours when the churches were unoccupied. In each case defendant either possessed or had removed property from the interior of each church. On both occasions, defendant gained entry through the rear areas of the churches. This evidence sufficiently demonstrates defendant harbored a similar intent and motive in each incident." The court also concluded that the "common features" of the two offenses indicated a common plan or scheme and showed Lacey's knowledge that his entry was unlawful.

The trial court further found that the evidence was not unduly prejudicial under section 352. With one exception, the prior conviction testimony would not be "more inflammatory than anticipated testimony about the charged offense . . . because both incidents are similar. Defense counsel points to the additional items of value that were attributed to the first burglary, including a Dell computer, a monitor and a sound amplifier, among other items. In the charged crime, defendant took a church lanyard and checks written in the name of several church patrons. He also removed a case of water into the garden area. The comparison between what was taken in 2013 and in 2023 does not indicate the prior uncharged burglary is more inflammatory. In fact, one could conclude that stealing checks written by church administrators is more dubious and indicates a plan to defraud." The fact that Lacey was convicted of the 2013 crime also

3

reduced the chance that the jury would seek to punish him for the uncharged offense and did not require the jury to decide whether the offense actually occurred. The court noted that the "only inflammatory part" about the 2013 offense was that Lacey and the pastor of the church "became involved in a physical altercation." The court saw "no reason for the jury to hear about the altercation" since nothing similar had occurred in the charged offense. The court thus concluded that testimony about the 2013 burglary conviction was admissible except for evidence about the physical fight.

At trial, after the operations manager and responding deputy testified, the People called to testify a pastor at the West Sacramento church that Lacey had burglarized in 2013. The pastor testified that around 5:00 a.m. on April 25, 2013, someone triggered an alarm at his church. When he arrived, he saw that a window on the back door had been removed. The pastor went into the church and saw Lacey run outside. The pastor followed. He saw that Lacey had gathered electronics and computer equipment from different places in the church. The equipment would have taken multiple trips in and out of the building to collect.

The trial court instructed the jury using CALCRIM No. 375, saying in part, "The People presented evidence that the defendant committed the offense of second degree burglary on April 25th, 2013, in violation of Penal Code [s]ection 459 that was not charged in this case. [¶] . . . [¶] If you decide the defendant committed the uncharged offense, you may, but are not required to, consider that evidence for the limited purpose of deciding whether: One, the defendant acted with the intent to commit theft. Two, the defendant had a motive to commit the offense alleged in this case. Three, the defendant had a plan or scheme to commit the offense alleged in this case. Four, the defendant's actions were not the result of mistake or accident. Or five, the defendant knew his entry was unlawful.

"In evaluating this evidence, consider the similarity or lack of similarity between the uncharged offense and the charged crime. Do not consider this evidence for any other

4

purpose. Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime. [¶] If you conclude that the defendant committed the uncharged offense, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove the defendant is guilty of second degree burglary. The People must still prove the charge beyond a reasonable doubt."

The trial court also instructed the jury using CALCRIM No. 200, which stated in relevant part, "Some of these instructions may not apply, depending on your findings about the facts of the case. Do not assume just because I give a particular instruction that I am suggesting anything about the facts. After you have decided what the facts are, follow the instructions that do apply to the facts as you find them."

During closing argument, the prosecutor briefly mentioned the pastor's testimony, saying, "The last witness you heard from in this case, . . . the guy from the West Sacramento incident from 2013, that's a very similar incident. And the ways that you can consider what happened from that prior church incident is for determining whether Mr. Lacey had the intent in this current incident. [¶] You can look at it for a few other reasons as well, whether Mr. Lacey had the knowledge that he was allowed to be in that church."

Defense counsel also discussed the prior conviction in his closing argument, urging, "aside from the fact that it happened at a church, that it happened in the morning, that's where the similarities end." The conviction was also 10 years old. Defense counsel further argued that in the charged offense, Lacey had entered the church around 7:00 a.m. but was "wandering around" the church until nearly 9:00 a.m., showing he was "going from place to place kind of aimlessly" and did not intend to steal.

In rebuttal, the prosecutor argued to jurors that "common sense" made Lacey's intent clear: "as soon as he pushed on that door, the alarm started blaring, and the room is dark. And he doesn't turn around. He goes into the next room. And every single time he enters a room with the intent to commit theft, he's doing a burglary. . . . [¶] . . . So

5

whether that be the first push of the church door, push of the admin door, push of the pastor's door, or when he walks into the sanctuary, if you all agree that in any one of those incidents that he had the mental intent to steal things, then he is guilty of burglary."

The jury found Lacey guilty of one count of burglary and found true the allegation that he had a 2010 prior conviction for robbery.

Lacey filed a timely notice of appeal.

DISCUSSION

I.

Lacey argues that the trial court erred when it allowed testimony about his prior burglary conviction into evidence. We find no merit in this claim.

"[E]vidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion." (§ 1101, subd. (a).) Such evidence may be admissible, however, "when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . .) other than his or her disposition to commit such an act." (§ 1101, subd. (b); see *People v. Harris* (2013) 57 Cal.4th 804, 841.)

The degree of similarity required between prior misconduct and the charged offense differs depending on the intended use of the evidence. "The least degree of similarity (between the uncharged act and the charged offense) is required in order to prove intent. [Citation.] '[T]he recurrence of a similar result . . . tends (increasingly with each instance) to negative accident or inadvertence or self-defense or good faith or other innocent mental state, and tends to establish (provisionally, at least, though not certainly) the presence of the normal, i.e., criminal, intent accompanying such an act . . . .' [Citation.] In order to be admissible to prove intent, the uncharged misconduct must be

sufficiently similar to support the inference that the defendant ' "probably harbor[ed] the same intent in each instance." ' " (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402.)

" 'A greater degree of similarity is required in order to prove the existence of a common design or plan.' " (*People v. Ewoldt*, *supra*, 7 Cal.4th at p. 402.) "[I]n establishing a common design or plan, evidence of uncharged misconduct must demonstrate 'not merely a similarity in the results, but such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations.' [Citation.] '[T]he difference between requiring similarity, for acts negativing innocent intent, and requiring common features indicating common design, for acts showing design, is a difference of degree rather than of kind; for to be similar involves having common features, and to have common features is merely to have a high degree of similarity.' " (*Id.* at pp. 402-403.)

In addition, for evidence of prior bad acts to be admissible, "such evidence ' " 'must not contravene other policies limiting admission, such as those contained in Evidence Code section 352.' " ' [Citations.] Under . . . section 352, the probative value of the proffered evidence must not be substantially outweighed by the probability that its admission would create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (*People v. Cole* (2004) 33 Cal.4th 1158, 1194-1195.) "We review for abuse of discretion a trial court's rulings on relevance and admission or exclusion of evidence under . . . sections 1101 and 352." (*Cole*, at p. 1195.)

In this case, the prosecution was required to prove that Lacey entered the church with intent to commit larceny or some other felony. (Pen. Code, § 459; *People v. Harris*, *supra*, 57 Cal.4th at p. 842.) Lacey's intent was the primary point of contention at trial. Defense counsel argued that Lacey did not intend to steal anything because he seemed to have simply wandered around the church for some time, while the prosecution argued that "common sense" and the burglar alarm made Lacey's intent clear. The prosecution also argued that the prior conviction should be considered to assess Lacey's intent.

We conclude that the prior conduct was sufficiently similar to the charged burglary to be probative of Lacey's intent. In *Harris*, our Supreme Court found no error in admitting evidence of a prior burglary conviction where "[i]n both cases, defendant entered a woman's dwelling within walking distance of his own apartment at night, and stole several items." (*People v. Harris*, *supra*, 57 Cal.4th at p. 842.) The court reasoned that the defendant's first burglary "support[ed] the reasonable inference that he also intended to steal from [the victim's] apartment" in the charged offense. (*Ibid.*) Likewise here, in both the prior conviction and the charged offense, Lacey entered churches through the rear areas early in the morning and took several items. Thus, the fact that he had previously entered a church intending to steal items supported a reasonable inference that he had the same intent when he entered the church in the charged offense. Lacey's current arguments—that he may have had a different intent in the current offense and that the prosecution did not rely heavily on the prior conviction in its closing argument—go to the weight of the evidence, not its threshold relevance for admissibility.

We likewise see no abuse of discretion in the trial court's conclusion that the testimony was admissible under section 352. To determine whether the probative value of evidence is substantially outweighed by the danger of undue prejudice, we consider the strength of the evidence in proving the disputed fact and whether "its source is independent of the evidence of the charged offense." (*People v. Ewoldt*, *supra*, 7 Cal.4th at pp. 404-405.) The "remoteness in time of evidence of uncharged misconduct" may also affect its probative value, although the extent of the effect "will vary, depending upon the circumstances of the case." (*Id.* at pp. 398, fn. 3, 405.) "On the other side of the scale" (*id.* at p. 405), "the prejudicial effect of the evidence is increased if the uncharged acts did not result in a criminal conviction. This is because the jury might be inclined to punish the defendant for the uncharged acts regardless of whether it considers the defendant guilty of the charged offense and because the absence of a conviction increases the likelihood of confusing the issues, in that the jury will have to determine

8

whether the uncharged acts occurred.  [Citation.]  The potential for prejudice is decreased, however, when testimony describing the defendant's uncharged acts is no stronger or more inflammatory than the testimony concerning the charged offense."  (*People v. Tran* (2011) 51 Cal.4th 1040, 1047.)

Here, Lacey acknowledges that the facts underlying his prior conviction are "nearly identical" to the facts of the charged offense.  That supports the conclusion that it was probative of his intent in the charged offense.  (*People v. Ewoldt*, *supra*, 7 Cal.4th at p. 404 [probative value of evidence "strong" where it was "nearly identical" to the charged offense].)  Moreover, the testimony about the 2013 conviction indisputably emanated from a different source than evidence supporting the charged offense.  The pastor of the West Sacramento church was not involved in the charged offense, did not offer any testimony about the facts of that offense, and Lacey does not argue that the pastor was influenced by knowledge of the charged offense.  Although the age of Lacey's prior conviction was relatively remote, our state Supreme Court has cited with approval at least one case finding admissible "evidence of uncharged misconduct even though one of the prior offenses was committed 15 years before the charged offenses."  (*Id.* at p. 405.)

As to prejudice, the prior conduct resulted in a conviction, reducing the probability the jury would seek to punish Lacey for those acts.  (*People v. Ewoldt*, *supra*, 7 Cal.4th at p. 405.)  The prior conduct was also no more inflammatory than the acts alleged in the charged offense:  in both cases, Lacey entered a church and stole items of value.  To the extent that Lacey engaged in a physical altercation in the 2013 burglary, the trial court expressly excluded that evidence.

Based on all these circumstances, the trial court did not abuse its discretion in admitting evidence of the 2013 conviction.

Lacey next contends that the trial court erred when it instructed the jury that it could consider his prior burglary conviction for the purpose of determining whether he had a plan or scheme to commit the offense alleged in this case. In Lacey's view, there was insufficient evidence to support any common plan or design. Assuming that we can consider this contention on appeal notwithstanding Lacey's failure to object to the instruction at trial (Pen. Code, § 1259) and assuming that the trial court erred in including reference to "a plan or scheme to commit the offense alleged" in CALCRIM No. 375 (e.g., § 355), any such error was harmless.

We review Lacey's claim of instructional error for prejudice under the standard in *People v. Watson* (1956) 46 Cal.2d 818. (*People v. Foster* (2010) 50 Cal.4th 1301, 1333.) Under that standard, "prejudicial error exists where it is ' "reasonably probable" ' that a result more favorable to the appealing party would have been reached in the absence of error." (*People v. Jandres* (2014) 226 Cal.App.4th 340, 360.) " ' "[A] 'probability' in this context does not mean more likely than not, but merely a *reasonable chance*, more than an *abstract possibility*." ' " (*Ibid.*)

Our Supreme Court considered a similar prejudice question in *Foster*. In that case, the trial court admitted evidence of the defendant's prior robberies and assaults in a trial on charges of murder, burglary, and robbery. (*People v. Foster*, *supra*, 50 Cal.4th at pp. 1307, 1326-1327.) Although the court admitted the evidence on the issues of intent and a common plan or scheme, the jury instruction permitted jurors to also consider the evidence to prove " 'the identity of the person who committed the crime.' " (*Id.* at p. 1327.) After determining that the evidence was admissible to prove intent and a common plan, the Supreme Court concluded that any error in the jury instruction was harmless. (*Id.* at p. 1333.) The court reasoned that "the evidence was *admissible*, regardless of whether it was relevant to the issue of identity. Thus, the jury would have heard this evidence even if the trial court had not admitted it to establish [the] defendant's

identity as the perpetrator." (*Ibid.*) Both parties also made statements in closing arguments suggesting that the evidence could not be used to prove identity. (*Id.* at pp. 1334-1335.) And there was "overwhelming evidence establishing that [the] defendant was, in fact, the perpetrator of the charged crimes." (*Id.* at p. 1333.)

A similar analysis applies here. The pastor's testimony was properly admitted on the issue of intent, so the jury would have heard the evidence whether it was relevant to the issue of a common plan or scheme. Neither side's closing argument asserted that the testimony should be used to determine whether there was a common plan or scheme: defense counsel disclaimed the use of the prior conviction for any purpose, and the prosecutor emphasized that it should be used to assess intent or whether Lacey had knowledge that he was not allowed to be in the church. In addition, there was significant evidence of Lacey's guilt. Lacey triggered a burglar alarm and was found at the scene with items obtained from different areas of the church in his possession. Furthermore, the trial court instructed the jury using CALCRIM No. 200 that it should disregard instructions that did not apply to the facts, and we presume jurors followed that instruction. (*People v. Holt* (1997) 15 Cal.4th 619, 662.) For these reasons, it is not reasonably probable Lacey would have obtained a better result with the instruction's reference to a plan or scheme excised.

DISPOSITION

The judgment is affirmed.

                                                    /s/
                                         FEINBERG, J.


We concur:


     /s/
BOULWARE EURIE, Acting P. J.


     /s/
WISEMAN, J.*

---

*  Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.