Filed 3/26/15  P. v. Leyva CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JESUS ALBERTO LEYVA,<br><br>    Defendant and Appellant. | B257337<br><br>(Los Angeles County<br>Super. Ct. No. VA129975) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Robert J. Higa, Judge.  Affirmed.

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Jonathan J. Kline and Nathan Guttman, for Plaintiff and Respondent.

_____

A jury convicted defendant Jesus Alberto Leyva of sexually abusing his 10-year-old daughter over the course of several years.[1] On appeal, he contends it was error to admit evidence of other sex offenses of which he was previously convicted. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *People's Case*

Viewed in accordance with the usual rules on appeal (*People v. Zamudio* (2008) 43 Cal.4th 327, 357-358), the evidence established that S. L. was born in January 2001. At all relevant times, S. lived with mother and defendant in the home of paternal grandmother. Defendant disciplined S. by hitting her on the bottom with a belt, which sometimes left marks. On about four occasions, S. saw defendant hit her mother in the stomach and face with his hands.

S. was 10 years old when she started the fifth grade and 11 years old when she completed it. Sometime before Christmas break that year, defendant entered S.'s bedroom during the night, while everyone else in the house was asleep. He instructed her to pull down her pants, then pulled down his own pants and told S. to hold his penis in her hand; next, defendant made S. orally copulate him. Defendant did the same thing about once a week while S. was in the fifth, sixth and the first-half of the seventh grades. Usually, the abuse occurred in her bedroom, but occasionally in the garage or the computer room. If it happened during the day, it was when mother and paternal grandmother were at work. On two occasions, defendant showed S. videos of women orally copulating men and told S. that was how she should be doing it. On three occasions, defendant threatened to hurt S. and her mother if she ever told anyone what defendant was doing to her. When S. tried to resist defendant, he hit her with a belt.

---

[1] Defendant was charged by information with oral copulation of a child under 10 (Pen. Code, § 288,7, subd. (b)) (counts 1, 2, 3, 4); aggravated sexual assault of a child—oral copulation (Pen. Code, § 269, subd. (a)(4)) (counts 5, 6, 7, 8, 9, 10, 11, 12, 13), aggravated sexual assault of a child – sexual penetration (Pen. Code, § 269, subd. (a)(5)) (counts 14, 15). He was convicted on all counts.

When S. was in the sixth grade, defendant began penetrating her with his finger (on cross-examination, S. testified this occurred for the first time when she was still in the fifth grade). Eventually, S. told paternal grandmother what defendant was doing to her. Paternal grandmother began taking S. with her when she left the house. About a week later, after S. discovered that paternal grandmother was going to move out of the house, she wrote a note to her mother telling her about the abuse. S. subsequently talked to police officers and was examined at a hospital.

Forensic Nurse Jan Hare examined S. on May 1, 2013. S. told Hare that defendant forced her to orally copulate him between 25 and 50 times. S. also told Hare that paternal grandmother warned S. she would be sent to foster care if she told anyone what had happened. S.'s mother told Hare the abuse occurred between October 2011 and March 2013. Hare's physical examination of S. resulted in no specific findings, which Hare testified is not unusual when the examination occurs some time after the alleged assault.

Pursuant to Evidence Code section 1108, subdivision (a), the People introduced evidence that in June 2001, defendant suffered prior convictions for sexual penetration and oral copulation of an intoxicated person (Pen. Code, §§ 289, subd. (e); 288, subd. (a)(1)), for which he was sentenced to six years in prison.[2] The victim, Crystal A., testified that while attending a work-related Christmas party in December 2000, Crystal went to a location where she drank a beverage. The next thing Crystal was aware of was defendant standing at the foot of a bed on which Crystal was lying nude; Crystal felt drugged and had no memory of what had happened between the time she drank the beverage and the time she found herself lying on the bed. When Crystal asked defendant for help, he got on top of her and forced her to orally copulate him. Crystal was crying when she told him to stop and tried to push him away, but defendant overpowered her. Defendant next raped her and sexually assaulted her with something like a glass bottle. Later, defendant took Crystal's driver's license and drove her to a location a few houses away from her home. While in the parked car, he tried to force Crystal to orally copulate

---

**2**      All undesignated statutory references are to the Evidence Code.

3

him again, but she successfully resisted. Defendant told Crystal he would come to her house and kill her if she told anyone what had happened.

B. *Defense Case*

Defendant testified that he was in prison as a result of the conviction arising out of the Crystal A. incident when S. was born in 2001. While defendant was still incarcerated, S. and her mother went to live with paternal grandmother. After he was paroled, defendant also lived there. Defendant obtained a commercial truck driver's license and a full time job. "Other than a few slaps," defendant never beat S.'s mother. Defendant admitted hitting S. with a belt for infractions such as "mouthing off" at him and not doing her homework. Defendant never orally copulated S. and never digitally penetrated her. Defendant admitted putting Desitin on S.'s vagina to treat a rash when S. was 12 years old. Defendant speculated S. was falsely accusing him at mother's behest because mother wanted to punish defendant for calling off their engagement.

Defendant denied sexually abusing the prior victim, Crystal A. In his version of events, they met at a party at which Crystal was drinking but defendant was not because he was driving. Defendant drove Crystal to his friend's house, stopping at a liquor store on the way to purchase two six-packs. When defendant drove Crystal home at about 5 o'clock the next morning, she instructed him to drop her off five houses away from her own home so that her husband would not see her coming home so late. Asked by defense counsel whether he gave Crystal any kind of drug that would incapacitate her, defendant testified: "Not me personally. But the guy–" Defense counsel interjected: "Okay. Let me stop you right there. The question is only as to your conduct. You can't testify to somebody else?"

On cross-examination, defendant denied that he and two friends took Crystal to the second house against her will, denied that Crystal did not want to have sex with all three of them and denied that Crystal did not want them to videotape her doing so. When Crystal said, "Stop," he understood her to mean only that the three men should have intercourse with her one at a time, not all three at once. Defendant pled no contest to

4

assault charges in exchange for a six-year sentence because the alternative was a possible life term for kidnapping. The other two men involved in the incident also pled no contest.

C.    *Rebuttal*

Crystal A. testified that while at the Christmas party, she felt a hard metal object which she thought was a gun pressed against her side. Defendant and two other men forced her into a car and took her to another house. When Crystal asked for water, they gave her a beer. After drinking the beer, she lost consciousness. When she regained consciousness, she was naked and alone in a room. A man, not defendant, entered the room and raped her. A second man did the same thing. Defendant was the third man to enter the room and rape her. The rapes were recorded by a video camera. Crystal did not agree to have sex with any of the three men and did not agree to be videotaped. She felt drugged, not intoxicated.

## DISCUSSION

A.    *Admission of the Crystal A. Evidence Was Not Error*

Defendant contends the trial court prejudicially erred in admitting evidence of the assault on Crystal A. over defense objection. Acknowledging that evidence of an uncharged sexual offense may be admissible under section 1108, defendant argues the challenged evidence was nevertheless inadmissible under section 352 because kidnapping, drugging and gang-raping a stranger is more heinous than sexually abusing a child-relative and was therefore more prejudicial than probative. We disagree.

1.    <u>Standard of Review</u>

We review the trial court's decision to admit or exclude evidence under sections 1108 and 352 for abuse of discretion. (*People v. Jandres* (2014) 226 Cal.App.4th 340, 353.) The exercise of such discretion " 'must not be disturbed on

5

appeal except on a showing that [it was] exercised . . . in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. [Citations.]' [Citation.]" (*People* v. *Rodrigues* (1994) 8 Cal.4th 1060, 1124-1125; see § 353 [erroneous admission of evidence may be the basis of a reversal only if the error resulted in a miscarriage of justice].)

       2.       <u>The Crystal A. Evidence Was Admissible Under Sections 1108 and 352</u>

Generally, evidence of past conduct (i.e., an uncharged crime) is not admissible to prove a person's conduct on a specified occasion. (§ 1101, subd. (a).) Section 1108 creates an exception to that general rule for a criminal defendant accused of a sexual offense: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." (§ 1108, subd. (a).) As relevant here, section 352 gives the trial court discretion to exclude evidence if its probative value is "substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice . . . ."

The relevant factors to consider in deciding whether evidence of an uncharged sexual offense is admissible under section 1108 and not inadmissible under section 352 include the nature of the challenged evidence, its " ' "relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense." [Citation.]' " (*People v. Avila* (2014) 59 Cal.4th 496, 515; see *People v. Hendrix* (2013) 214 Cal.App.4th 216, 238.)

In *Avila*, the defendant was charged with kidnapping, sexually abusing and murdering a five year old girl in 2002. Over defense objection, the prosecutor presented

6

evidence that the defendant had sexually molested two seven year olds in 1997 (the defendant was charged but acquitted of all charges) and an 11 year old in 1999 (the child apparently came forward after the 2002 murder). The appellate court found no abuse of discretion in the admission of the prior sexual offense evidence. It reasoned that such evidence was extremely probative: "They were sex crimes against young girls, suggesting defendant was a pedophile who committed the crimes against the young female victim in this case. The evidence strongly corroborated the other evidence of defendant's guilt of the charged offenses. This circumstance brings the evidence precisely within the primary purpose behind Evidence Code section 1108." (59 Cal.4th at p. 516.) The *Avila* court found further that the other crimes "were neither remote nor particularly inflammatory when compared with the facts of the charged crime. Additionally, although defendant had previously been acquitted of the crimes against two of the girls, the evidence at this trial that he committed those crimes was much stronger. A third girl came forward with similar testimony. Moreover, [evidence of defendant's incriminating statements to his sister] strengthened the force of the evidence. Given all of the circumstances, the court acted within its discretion in admitting the evidence." (*Id.* at p. 516.)

We find no abuse of discretion in the trial court's finding that the Crystal A. evidence was admissible under section 1108 and not more prejudicial than probative within the meaning of section 352. Inasmuch as the convictions arising from the assault on Crystal followed a plea of no contest, there is a high degree of certainty that those acts occurred and there is no burden on defendant to defend against those charges. (*People v. Loy* (2011) 52 Cal.4th 46, 61 [defendant's commission of uncharged offense was established by his conviction].) That defendant claimed he pled guilty to avoid a possible life term for kidnapping is of little consequence. The prior conviction also meant that the jury would not be tempted to convict defendant of the charged crime to punish him for the earlier crime. (*Ibid.*)

Although committed against an adult stranger, the acts which comprised the crimes committed against Crystal A. are not unlike the acts defendant is alleged to have

committed against S.: forced oral copulation and sexual intercourse. As such, the assault on Crystal is relevant under section 1108. Contrary to defendant's assertion, that Crystal was an adult stranger and the victim in this case was defendant's own 10-year-old daughter does not make the facts of the assault on Crystal more heinous than those in this case. The trial court could have reasonably concluded that ongoing sexual abuse of one's own child is more heinous than a sexual assault on an adult stranger. Further, while the People initially presented the Crystal evidence in a manner which excluded the more inflammatory details surrounding the offense in accordance with the court's pre-trial ruling, defendant's own testimony opened the door to admitting further details. In particular, defendant's attempt to portray Crystal as a willing partner allowed the prosecutor to introduce evidence that defendant was one of three men who forced Crystal into a car at apparent gun point, drugged her and video-taped themselves gang-raping her.

Nor do we find the 2000 assault on Crystal A. too remote to be relevant to the allegations that defendant sexually abused S. between 2011 and 2013. Defendant was apparently incarcerated for much of the intervening time.

Defendant's reliance on *People v. Harris* (1998) 60 Cal.App.4th 727, for a contrary result is unpersuasive. In that case, the defendant was a mental health nurse convicted of sexually battering two incapacitated and mentally troubled women under his care by orally copulating one and fondling the other. The appellate court reversed the convictions, finding prejudicial error in the admission of section 1108 evidence that defendant committed another sexual offense in 1972. The challenged evidence was that defendant was convicted of first degree burglary with the infliction of great bodily injury arising out of the following "sanitized" facts: at about 3:00 a.m. in July 1972, a neighbor alerted police to strange noises in the apartment next to hers; upon entering the apartment, the police found a woman, apparently the victim of a rape, lying unconscious on the floor; the woman was naked from the waist down, her face was swollen and bloody and there was blood on her vagina; when defendant was found hiding nearby, he was holding a key ring and had blood on the crotch area of his clothes and on his penis. The *Harris* court found this evidence "was inflammatory in the extreme." (*Id*. at p. 738.)

8

It explained: "The charged crimes involving a breach of trust and the 'taking advantage' of two emotionally and physically vulnerable women are of a significantly different nature and quality than the violent and perverse attack on a stranger that was described to the jury. The version that the jury heard, while not as gruesome as the actual incident, was an incomplete and distorted description of an event that did not actually occur. As disturbing as the actual incident was, it was at least coherent, while on the other hand, the crime testified to by the officers must have caused a great deal of speculation as to the true nature of the crime." (*Ibid.*) It also found the fact that all of the victims were Caucasians in their 20's or 30's did not make the 1972 crime similar enough to the charged offenses to make it probative. (*Id.* at pp. 740-741.) In addition, it found the 23 years between the uncharged and charged offenses weighed in favor of exclusion. (*Id.* at p. 739.)

*Harris* is inapposite to this case. First, as we have already discussed, the Crystal A. evidence was not overly inflammatory compared to the charged crimes. Second, there are significant similarities between the Crystal A. crimes and the charged crimes: both crimes involved forced oral copulation and intercourse. Third, the Crystal A. crimes were not particularly remote in time, especially taking into account that defendant was incarcerated for much of the intervening time.

B.      *Federal Due Process*

Defendant contends he was denied federal due process and equal protection as a result of the admission of the Crystal A. "propensity evidence" pursuant to section 1108. While acknowledging the California Supreme Court has affirmed the constitutionality of section 1108 (see *People v. Loy, supra,* 52 Cal.4th at pp. 60-61; see also *People v. Falsetta* (1999) 21 Cal.4th 903, 915), defendant argues the *Loy* court's failure to discuss a 2001 Ninth Circuit case warrants this court reevaluating the issue. But the California Supreme Court, not this court, is the proper tribunal to reconsider *Loy* if it considers it appropriate to do so. (*Auto Equity Sales, Inc. v. Superior Court of Santa Clara County* (1962) 57 Cal.2d 450, 455.)

## DISPOSITION

The judgment is affirmed.


RUBIN, ACTING P. J.

WE CONCUR:


FLIER, J.


GRIMES, J.