Filed 10/31/23  P. v. Winkle CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JOE THOMAS VAN WINKLE,<br><br>Defendant and Appellant. | F083618<br><br>(Super. Ct. No. BF177533)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Kenneth C. Twisselman II, Judge.

Solomon Wollack, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Michael A. Canzoneri and Eric L. Christoffersen, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Appellant Joe Thomas Van Winkle was convicted by jury of sexual crimes against his stepdaughter (Jane Doe #1) and daughter (Jane Doe #2) that occurred when they were minors: two counts of lewd or lascivious acts with a child under 14 years old (Pen. Code,

§ 288, subd. (a); counts 3 & 6 [one against each victim]) and two counts of oral copulation or sexual penetration of a child (Pen. Code, § 288.7, subd. (b); counts 2 & 5 [one against each victim].)  The jury found true that appellant committed the offenses against multiple victims (Pen. Code, § 667.61, subd. (e)(4)).  Appellant was sentenced to two consecutive terms of 25 years to life as to counts 3 and 6 and two consecutive terms of 15 years to life as to counts 2 and 5 for a total prison term of 80 years to life.

On appeal, appellant contends the trial court erred by admitting evidence of an uncharged act of assault with intent to commit sodomy perpetrated against his then wife in 2007.  He contends the evidence was improperly admitted under Evidence Code section 1108 and violated his constitutional due process rights.

Finding no error, we affirm.

## FACTS

Appellant was married to S.R. and was stepfather to Jane Doe #1, born in February 2001, and father to Jane Doe #2, born in September 2002.  Appellant and S.R. also shared two sons and another daughter born in March 2014.

On October 8, 2014, Jane Doe #1, Jane Doe #2, and their friend, A.R., went to their middle school counselor to report that appellant had been sexually abusing Jane Doe #1 and Jane Doe #2 for years.  Because they were having trouble saying it verbally, the school counselor left the room, while all three girls wrote letters to the school counselor.  Based on what was written in the letters, which outlined acts of sexual abuse, the counselor made a report to law enforcement, and appellant was eventually arrested.

Jane Doe #1, who was 20 years old at the time of trial, and Jane Doe #2, who was 19 years old at the time of trial, each testified extensively about repeated acts of sexual abuse perpetrated on them by appellant; some testimony was general, and some was about specific instances.

Jane Doe #1 testified appellant began making her "suck his penis" when she was about six years old in multiple areas throughout their home, including the garage of the

2.

house the family lived in at the time the allegations came to light. She described several specific instances of oral copulation, including one which occurred when she was under the age of 10, and testified that between the ages of six and 13, she orally copulated appellant 50 times or more. Jane Doe #1 testified that if she did not comply with appellant's requests, or she did something wrong while performing oral sex, appellant would hit her; on one occasion, he gave her two black eyes and swollen lips for not "sucking his dick correctly."

In the summer of 2014, when Jane Doe #1 was in eighth grade, appellant pulled Jane Doe #1's pants down while they were in the laundry room and put his penis inside her anus. Appellant penetrated her anus with his penis about five to 10 times over the period of a year when she was 12 or 13 years old. Appellant would give Jane Doe #1 banana-flavored alcohol in connection with the sexual acts; on one occasion, she got drunk and was running around in the hallway of the home. In the hallway, appellant pulled her pants down and put his penis in her anus and moved it in and out. She told appellant it hurt, and he told her not to move. Jane Doe #1 testified to other specific instances of anal penetration.

The prosecution introduced Facebook messages sent between appellant and Jane Doe #1 at around 11:00 p.m. on a night in December 2013. One of the messages appellant had sent Jane Doe #1 said, "you can have the banana on Friday" and later "and a cinnamon if you want it." Jane Doe #1 understood this to mean the banana-flavored alcohol appellant would give her. Jane Doe #1 did not recall appellant giving her cinnamon-flavored alcohol but thought that was what he meant by "a cinnamon." Later in the conversation, appellant said, "I wnt u," which Jane Doe #1 understood to mean that he wanted her body. Appellant had previously told her he "wanted" her in person. In another Facebook message conversation appellant said, "love you miss you hope to see you and ur butt." Jane Doe #1 understood that to mean that he "wanted anal sex with" her.

3.

The prosecution introduced evidence that two photos were found on appellant's cell phone which focused on Jane Doe #1's clothed "crotch" area.

Jane Doe #2 testified appellant began sexually abusing her when she was seven years old. Appellant would make her "suck" his penis in the hallway or garage of their home. If she did not comply, he would hit her in the face or ground her, but she always eventually complied. He hit her for not complying at least twice. The incidents would end by her taking his penis out of her mouth, and if they were in the garage, "sperm would go to the floor." She orally copulated appellant "just about every night for years" after her mother would go to bed. She remembered on one occasion, when she was orally copulating appellant in the garage, appellant ejaculated in her mouth and she spit it out on the floor of the garage. This went on until she was 12 years old and it got more frequent as she got older.

Appellant also made Jane Doe #2 "do anal." This would happen in appellant and her mother's bedroom. He would tell her to get on her hands and knees with her butt in the air. He would take off her pants and underwear, and put his penis inside her anus and move it back and forth, which Jane Doe #2 stated hurt really badly. This started when she was about 11 years old and happened about three times. Jane Doe #2 also recounted two incidents of vaginal intercourse, which both occurred when she was about 11 years old.

Defense counsel thoroughly cross-examined Jane Doe #1 and Jane Doe #2 on various inconsistencies between their trial testimonies, initial and follow up interviews with law enforcement, and forensic interviews, highlighting certain acts or details that were reported at trial or the forensic interviews but omitted from their statements to law enforcement. Defense counsel also elicited testimony from the girls that appellant was physically abusive towards them and that they wanted him out of their household.

S.R. testified she did not know appellant was sexually abusing the girls until they reported the allegations in October 2014. When S.R. was married to appellant, S.R. left

Jane Doe #1 and Jane Doe #2 alone with him when she went to the grocery store or other shops, and sometimes she would go to church by herself, and they would stay home. Appellant went to bed later than S.R., and appellant was often not in bed by the time she went to sleep. After the allegations came to light, S.R. ended her relationship with appellant. In December 2015, she began dating, and eventually married the father of the girls' friend, A.R., in November 2016.

S.R. further testified about a specific incident which occurred in 2007. She testified she was in the bedroom late at night or early in the morning, and appellant, who had been drinking heavily, entered the bedroom. Appellant wanted to have sex with S.R., and she told him no. Appellant pushed her onto the bed and was behind S.R. and told her he "wanted to rape [her] in [her] ass." Appellant then flipped S.R. over and slapped her across the face. S.R. got up and ran to the door; appellant chased her, grabbed her, and threw her back onto the bed and said, "I'm going to fucking rape you." S.R. told appellant no, and he hit her four more times in the face, causing bruising. Appellant then stood up and left, and S.R. called 9-1-1. Appellant fled from the home, and when law enforcement arrived, S.R. reported what happened. Appellant was charged with domestic violence and took a plea deal.

S.R. also testified that she learned Jane Doe #1 and Jane Doe #2 had been engaging in self-harm. Both girls entered counseling after reporting the abuse; Jane Doe #2 was still in counseling at the time of trial, and Jane Doe #1 went for about three years. Both girls experienced anxiety, depression, panic attacks, Posttraumatic Stress Disorder, and nightmares. Both girls at some point started doing independent study at home due to their anxiety and panic attacks.

On cross-examination, S.R. testified appellant hit the children a lot over stupid things because he had a temper. The children were comfortable telling S.R. that appellant hit them but never reported the sexual abuse. S.R. further testified that the children saw the problems she had with appellant and hated him for treating her the way

he did.  They expressed to her that they wished she was not with appellant and wished he was not around.  They expressed this many times prior to October 2014.  They were unhappy and did not want to be in that environment.  Prior to October 2014, appellant would often use profanities and had said the phrase, "suck my dick," numerous times around the house in the children's presence.

On cross-examination, S.R. further testified that when Jane Doe #2 was about three or four years old, appellant spanked her so hard that she "pooped herself," and the police were called out.  On another occasion, the family was out fishing, and appellant asked Jane Doe #2 to get the fishing net, and because she took too long, he grabbed the net and hit her on the top of her head with the pole of the net, and the police were again called out.  Appellant pled to an offense in relation to this incident and went to jail.  In relation to the 2007 domestic violence incident, appellant also did jail time.  During that incident, there was no sexual contact.  Shortly after the incident, S.R. told Jane Doe #1 and Jane Doe #2 what had happened.  She told them exactly what appellant tried to do, and the things he said to her.  The girls were sad about what happened and wanted S.R. to leave appellant.

Samples from several areas of the garage floor of the family's residence were collected to be tested against known samples of appellant's, Jane Doe #1's, and Jane Doe #2's DNA.  Some samples tested positive for saliva.  Others were positive for semen.  One was positive for semen and saliva.  Appellant could not be excluded from any of the samples.  Both girls were excluded from one of the saliva samples.  The results were inconclusive as to both girls for other saliva samples.  As to one of the saliva samples, Jane Doe #1 was excluded, but Jane #2 was not excluded and was opined to be a major contributor.

The defense introduced evidence that shortly after reporting the abuse, Jane Doe #2 had friendly communication with appellant via Facebook Messenger.

Appellant testified in his defense. He denied all allegations of sexual abuse and confirmed he had used physical discipline on his children and lost his temper with his family. He testified he did not take the photos of Jane Doe #1's crotch area and that his children had access to his phone. With regard to the Facebook messages between he and Jane Doe #1, he was not referring to alcohol and had used a talk-to-text feature that did not accurately convey what he was trying to say. He testified he would often smoke in the garage. Further, he had had sexual relations with his wife, as well as another woman, in the garage and had also slept there many nights. He further testified Jane Doe #1 had walked in on him while the woman with whom he had extramarital relations was performing oral sex on him in the garage. When he tried to cover himself up, he ejaculated on the floor. Appellant further testified he was away from the home for long periods of time and was rarely alone with the children.

## DISCUSSION

Appellant contends the trial court abused its discretion by admitting the 2007 incident perpetrated against S.R. to show appellant's propensity to commit the charged sexual offenses.[1] We disagree.

---

[1] Appellant briefly claims admission of the 2007 incident "ran afoul of the Fourteenth Amendment's due process clause" without much explanation beyond appellant's primary contention the admission was error under Evidence Code section 1108. We reject this claim with little further discussion. "[T]he admission of evidence, even if erroneous under state law, results in a due process violation only if it makes the trial *fundamentally unfair*." (*People v. Partida* (2005) 37 Cal.4th 428, 439.) Appellant makes no attempt to show how the trial was rendered fundamentally unfair. A brief must contain reasoned argument and legal authority to support its contentions or the court may treat the claim as forfeited. (*People v. Stanley* (1995) 10 Cal.4th 764, 793.) As such, we evaluate appellant's claims under state law principles only. However, even if we were to address the merits of appellant's due process claim, we would reject it; because we find no state law violation, we conclude the alleged error does not rise to the level of a due process violation.

## I.     Relevant Background

The prosecution sought to introduce, and appellant sought to exclude, evidence of the 2007 assault against S.R. to show propensity to commit the charged sexual offenses.

In addressing the general issue of admission of prior uncharged acts on the record, defense counsel stated they were seeking to introduce 2005 and 2011 incidents of abuse against Jane Doe #2 as "they are probative value to the defense's theory of the case…. [¶]  The defense's theory is that although [appellant] may be a tough dad or a difficult dad, a dad who was rule-oriented and strict on his kids, he is not a child molester and that … his behavior of being a tough dad or a strict dad, whether it be verbally or physically, is a motive for the girls in making these false accusations to move away from the father and his behavior."[2]

As to the 2007 incident involving S.R., defense counsel argued the statements appellant made during the assault regarding raping S.R. "do not rise to an actual offense." He also contended that the offense was too dissimilar to the charged offenses in that Jane Doe #1 and Jane Doe #2 had not reported appellant making similar statements to them and that no sexual contact occurred during the 2007 incident.

The court indicated its tentative ruling was to exclude the 2007 incident because it was not similar enough to the allegations made by the alleged victims.  The court invited the prosecutor "to look for other evidence he could make an offer of proof on that the defendant either used violence or threats of violence in order to obtain sexual acts from the two girls."  The court further noted that in light of the defense's desire to introduce the 2011 and 2005 incidents, "evidence that the defendant engaged in violent conduct to accomplish his goals … made the … 2007[] incident more probative and I would possibly reconsider my tentative to exclude it under [Evidence Code section] 352."

---

**2**     These were the incidents described at trial that caused Jane Doe #2 to "poop" herself and the fishing net incident.

The prosecutor later argued the 2007 incident showed sufficient evidence to support appellant had committed assault with intent to commit rape, Penal Code sections 220, subdivision (a)(1) and 261. The prosecutor described several alleged acts of force appellant used against Jane Doe #1 and Jane Doe #2 in connection with the sexual allegations. The prosecutor went on to argue the 2007 incident was less egregious than the charged conduct and would not overwhelm the jury but was probative in that it showed sexual deviancy by appellant against a female member of his household and because of the similarities in the allegations of force or violence.

Defense counsel argued the 2007 incident was not probative because it was an incident between spouses and included no sexual contact. He argued the prejudicial effect was high because appellant would be unfairly painted as a "sexual deviant," not only against his children but against his wife.

After hearing argument, the court concluded that the prosecutor's offer of proof was sufficient to allow admission of the 2007 incident. The court noted it considered several factors and found the propensity evidence had probative value, stating: "The uncharged conduct is similar enough to the charged behavior to tend to show the defendant did, in fact, commit the charged offenses. I do not find the propensity evidence is stronger or more inflammatory than evidence of the defendant's charged acts. I don't find it's remote or stale. I don't find that it's likely to confuse or distract the jurors." The court continued, "And so, having considered all those factors, I do not find that the prejudicial effect of that evidence would substantially outweigh its probative value."

S.R. testified as to the 2007 incident as described, *ante*.

The court instructed the jury on the incident as follows: "The People presented evidence that the defendant committed the crime of assault with intent to commit sodomy that was not charged in this case. This crime is defined for you in these instructions. You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant, in fact, committed the uncharged offense." The court

9.

defined proof by preponderance of the evidence and further instructed, "If you decide that the defendant committed the uncharged offense you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses and, based on that decision, also conclude that the defendant was likely to commit the crimes charged here." The court further instructed, "If you conclude that the defendant committed the uncharged offense, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of the crimes charged here. The People must still prove each charge and allegation beyond a reasonable doubt. Do not consider this evidence for any other purpose." (CALCRIM No. 1191A.)

The court instructed the jury with the relevant portions of the pattern instructions for assault with intent to commit specified crimes (CALCRIM No. 890) and sodomy by force, fear, or threats (CALCRIM No. 1030).

The defense had lodged an unsuccessful objection to the court's characterization of the uncharged act as "assault with intent to commit sodomy" rather than "assault with intent to commit rape" as discussed during argument on the in limine motions because the original police report made no mention of sodomy. The prosecutor acknowledged the original 2007 police report did not contain reference to sodomy, but S.R. disclosed that appellant told her he wanted to "F her in the ass" to law enforcement during her interview in connection with the October 2014 allegations, so the defense had notice that the offense could be characterized as "assault with intent to commit sodomy." The prosecutor further argued it was the most appropriate characterization because it was the most accurate given S.R.'s testimony at trial. The court ruled in favor of the prosecution and was "persuaded that the defendant was on notice from the interview that [S.R.] gave in 2014 that the allegation was that he wanted to have anal sex."

### B. Analysis

Evidence Code section 1101, subdivision (a) provides that propensity evidence is not admissible to prove a defendant's conduct on a specific occasion. (*People v. Jackson* (2016) 1 Cal.5th 269, 299.) Evidence Code section 1108 "carves out an exception to Evidence Code section 1101." (*People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 823.) Evidence Code section 1108, subdivision (a) provides that "[i]n a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by [Evidence Code] Section 1101, if the evidence is not inadmissible pursuant to [Evidence Code] Section 352." The statute defines "sexual offense" as "a crime under the law of a state or of the United States," including "[a]ny conduct proscribed by Section 220 of the Penal Code, except assault with intent to commit mayhem," which includes, as relevant here, assault with intent to commit sodomy. (Evid. Code, § 1108, subd. (d)(1)(B).)

"[T]he admissibility of uncharged conduct pursuant to [Evidence Code] section 1108 turns on the existence of a preliminary fact—namely, that the uncharged conduct constitutes a statutorily enumerated 'sexual offense.' " (*People v. Jandres* (2014) 226 Cal.App.4th 340, 353 (*Jandres*).) "The trial court must make a preliminary determination of whether the proffered evidence is sufficient for the jury to find, by a preponderance of the evidence, that the defendant committed an enumerated offense. [Citations.] 'The court should exclude the proffered evidence only if the "showing of preliminary facts is too weak to support a favorable determination by the jury." ' " (*Ibid.*)

"[Evidence Code] Section 352 articulates the general rule that '[t]he court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.' " (*People v. Erskine* (2019) 7 Cal.5th 279, 296.) Under Evidence Code section 352, factors the court should consider in deciding whether to admit a past sexual

11.

offense "are the ' "nature, relevance, and possible remoteness [of the evidence], the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex crimes." ' " (*People v. Erskine*, at p. 296.)

We review both the trial court's determination of the preliminary fact of whether the evidence constitutes a sexual offense and its ultimate decision to admit the evidence after conducting an Evidence Code section 352 analysis for abuse of discretion. (*People v. Erskine*, *supra*, 7 Cal.5th at p. 296; *Jandres*, *supra*, 226 Cal.App.4th at p. 353.)

Appellant first suggests the facts of the 2007 incident did not constitute the offense of assault with intent to commit a sexual offense because the facts only show that appellant intended to commit domestic violence. We disagree. During the course of the assault against S.R., appellant told her he was going to "rape" her. The trial court could have reasonably concluded the jury could infer that appellant's words indicated his intent. That appellant did not ultimately have any sexual contact with S.R. and that he was not charged with a sexual offense in connection with the incident would not preclude the jury from finding that at some point during the assault appellant intended to forcibly rape or sodomize S.R. by a preponderance of the evidence. We, therefore, conclude the trial court did not abuse its discretion by making the preliminary determination that the facts constituted a sexual offense within the meaning of the statute.

We turn to the trial court's conclusion that the 2007 incident was not inadmissible under Evidence Code section 352. We conclude the trial court's determination that the potential prejudicial effect of the 2007 incident did not substantially outweigh its probative value was not an abuse of discretion. The 2007 incident involved force, like many of the incidents testified to by Jane Doe #1 and Jane Doe #2 and was perpetrated

12.

against a member of appellant's own family. Further, appellant's threat was to commit sodomy against S.R., and both Jane Doe #1 and Jane Doe #2 accused appellant of repeated acts of sodomy. The 2007 incident was not too remote, as it occurred around the same time period as some of the offenses against Jane Doe #1 and Jane Doe #2. While, as appellant points out, there were also dissimilarities between the 2007 incident and the charged crimes, including that S.R. was appellant's wife and not a minor, we cannot say these dissimilarities rendered the trial court's ultimate decision unreasonable, so as to constitute an abuse of discretion. There was still a probative value to the evidence as to appellant's willingness or propensity to commit sexual offenses against female members of his family.

As for the potential prejudicial effect, it was relatively low under the circumstances of the present case. The 2007 incident could have been used to show appellant's propensity to commit sexual offenses, as we have stated, but it also could have bolstered appellant's defense, which was that Jane Doe #1 and Jane Doe #2 orchestrated a "web of lies" to get appellant out of their home based on his nonsexual abuse of them as well as S.R. The defense elicited evidence of appellant's physical discipline towards his children, including two instances of abuse of Jane Doe #2 that resulted in law enforcement involvement. The defense sought to highlight appellant's violence and overall bad qualities as a father in order to show the girls had motive to lie. The defense elicited that S.R. told the girls about the 2007 incident and that appellant went to jail because of the incident. The facts of the 2007 incident were not more egregious than the charged offenses nor, we note, the evidence defense counsel elicited to show appellant's physical violence towards the children.

Further, the testimony about the 2007 incident took up little time at trial, which appellant acknowledges. The jury was unlikely to confuse the issues; they were correctly instructed by the court on how they were to use to the 2007 incident, if they found it to be

13.

true by a preponderance of the evidence, and the prosecutor also accurately explained the role of the 2007 incident in the People's case and how the jury was permitted to use it.

Finally, nothing in the record suggests the jury did not diligently discharge their duty or were somehow unduly prejudiced against appellant because of the 2007 incident. They deliberated for over two days and requested readback of a portion of Jane Doe #1's testimony.

We reject appellant's suggestion that the prosecution was required to present expert testimony about a link between the offense against S.R. and the offenses against Jane Doe #1 and Jane Doe #2. To support this contention, appellant cites *People v. Earle* (2009) 172 Cal.App.4th 372 (*Earle*) and *Jandres*, *supra*, 226 Cal.App.4th 340. Neither is persuasive to appellant's contention as applied to the present case. In *Earle*, the issue on appeal was the denial of the defendant's motion to sever a misdemeanor indecent exposure case from an assault with intent to commit rape case. (*Earle*, at pp. 378, 384.) The *Earle* court found error, concluding, among other things, the evidence supporting the indecent exposure offense would not be cross-admissible under Evidence Code section 1108 to show a propensity to commit an assault with intent to rape because, without expert testimony, an indecent exposure offense had no tendency in reason to show the defendant had the propensity to commit rape. (*Earle*, at pp. 397–398.)

To the extent *Earle* concludes a sexual offense is irrelevant to prove a different sexual offense without supporting expert testimony, we disagree. Such a holding would usurp the trial court's discretion to make case-by-case relevance determinations based on the nature, circumstances, and details of a defendant's prior sexual offenses and the charged sexual offenses. It would also abrogate Evidence Code section 1108's underlying rationale to make prior sexual offenses more easily admissible in subsequent sexual offense prosecutions, not harder. (See *People v. Falsetta* (1999) 21 Cal.4th 903, 911 [Evid. Code, § 1108 "was intended in sex offense cases to *relax the evidentiary restraints* section 1101, subdivision (a), imposed, to assure that the trier of fact would be

14.

made aware of the defendant's other sex offenses in evaluating the victim's and the defendant's credibility" (italics added)].) We do not suggest expert testimony may never be necessary to establish relevance between different sexual offenses; rather, only that such determinations should be left to the discretion of the trial court and based on the individual facts of a given case. The *Earle* court determined indecent exposure and assault with intent to commit rape were too dissimilar, based on the facts in that case, to satisfy Evidence Code section 1108 for purposes of a severance motion. We are unwilling to apply this fact-based holding to the present case.

Appellant's reliance on *Jandres* to suggest expert testimony was required is misplaced. There, the "inquiry [was] whether evidence that [the] defendant exhibited sexual interest in an 11-year-old girl by putting his finger in her mouth [during an attempted kidnapping] rationally supports an inference that [the] defendant was predisposed to rape an 18-year-old woman." (*Jandres*, *supra*, 226 Cal.App.4th 340, 356.) Deciding it did not, the court noted the differences in intent and the ages of the victims. (*Ibid*.) Although the *Jandres* court cited *Earle*, it was not because of a lack of expert testimony, but instead because the court simply found the prejudicial effect of the prior conduct outweighed its probative value. (*Jandres*, at p. 357.)

Neither *Earle* nor *Jandres* are persuasive because, as we have explained, the facts of the 2007 incident were sufficiently similar to the facts of the charged offenses to have probative value as to propensity to commit the charged offenses, so as not to constitute an abuse of discretion.

For the reasons we have set forth, we conclude the court did not abuse its discretion by admitting evidence of the 2007 incident and find no error.

We will briefly address appellant's argument that the trial court "compounded its error by identifying the uncharged crime as an assault with intent to commit sodomy, rather than a more generic sex crime" (emphasis omitted) in its instructions to the jury. Because appellant raises no independent claim of legal error with regard to the jury

instruction and because we find the trial court did not err by admitting evidence of the 2007 incident, we reject this argument with no further discussion.

## DISPOSITION

The judgment is affirmed.


DE SANTOS, J.

WE CONCUR:


HILL, P. J.


SMITH, J.