Filed 12/15/25  P. v. Grissom CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H052002 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. B2100597) |
| v. | |
| DONALD WAYNE GRISSOM, | |
| Defendant and Appellant. | |

A jury convicted Donald W. Grissom of domestic violence and misdemeanor vandalism, and the trial court granted probation and sentenced him to a term on electronic monitoring.  On appeal, Grissom argues that the court prejudicially erred in admitting audio recordings of conversations between Grissom and his then-girlfriend, in which he admitted or failed to deny prior uncharged acts of abuse.  Because the court acted within its discretion in balancing the recordings' probative value against their prejudicial impact, we will affirm.

## I.     BACKGROUND

The Santa Clara County District Attorney charged Grissom with inflicting corporal injury on a person with whom he was in a dating relationship (Pen. Code, § 273.5, subd. (a); count 1), and misdemeanor vandalism (Pen. Code, § 594, subd. (b)(2)(A); count 2).  Both counts arose from a February 2021 altercation between Grissom and his then-girlfriend, Kelly K., at the home Kelly was living in.

## A.    *Prior Uncharged Acts*

Under Evidence Code section 1109,[1] the prosecutor moved in limine to admit eight audio recordings of conversations between Kelly and Grissom, as well as Kelly's "accompanying testimony" about prior uncharged acts of abuse purportedly addressed in those conversations.  After listening to the recordings, the trial court overruled Grissom's section 352 objection and admitted all but two.  The court reasoned that the recordings had probative value because they consisted "mostly of [Kelly] making statements about being hit or choked or physically assaulted by Mr. Grissom, and him either not denying it, when they were clearly engaged in conversation, or actually admitting that he had done so."[2]  While the court acknowledged "some danger" that the recordings would confuse the jury, the court intended to "try and straighten it out with [jury] instructions."  And with "about 30 minutes' worth of recordings," the court did not believe admission of the recordings would cause an "undue expenditure" of time.

The prosecution played excerpts from the admitted recordings, and Kelly testified and provided context about the incidents captured in each.  According to Kelly, Grissom became abusive during the first year of their relationship.  Grissom's first acts of abuse included yelling and screaming in her face, calling her a "bitch" and "cunt," and spitting at her.  At some point, Kelly began recording conversations between herself and Grissom

---

[1] Undesignated statutory references are to the Evidence Code.

[2] The audio recordings were not included as a part of the record on appeal but were summarized without objection in the prosecutor's closing argument.  In one recording, Grissom denied Kelly's accusation that he had choked her and replied:  " 'I didn't choke you.  I grabbed you by the neck, and you talked about my kids.  That's what happens when you talk about my kids.' "  In another, Grissom told Kelly:  " 'This is why you got pushed[.]  [B]ecause you were in my face last time.' "  In a third recording, Kelly accused Grissom of causing "bruises" on her body, to which Grissom replied, " 'Well, you started it because you woke me up and called me a liar so that's what you get.' "  And in a fourth excerpt, Kelly said that Grissom had " 'kissed [her] bruises,' " and Grissom replied, " 'Oh, was that not good enough for you?' "

2

to avoid Grissom "turn[ing] the arguments on" her. Although Kelly told Grissom she was recording their conversations, "he didn't care." But whenever confronted with the recordings, Grissom would break Kelly's phone by "slapp[ing] it out of [her] hands."

Kelly testified that during their relationship, Grissom had (1) punched her, (2) given her a "fat" or "swollen lip" by hitting her in the face, (3) pushed her "more than 20 [times]," (4) given her a bruise on the leg, and then kissed the bruise while promising never to hit her again, and (5) grabbed her by the throat three times, and on one of those occasions, squeezed so hard that she was not able to talk, swallow, or breathe.

## B. *Charged Acts*

By February 2021, Grissom had moved out of the home he and Kelly had briefly shared. The day of the charged acts, Grissom returned to pick up his mail, and he and Kelly argued. Grissom became angry and verbally abusive, then threw his mail in the driveway and left. Returning later that day, he appeared contrite and asked to give Kelly a hug. When he leaned in for the hug, he saw a knife Kelly was hiding under some couch cushions. Grissom became "enraged," grabbed the knife, and put it to his own throat, threatening to kill himself.

Scared, Kelly tried to get Grissom to leave the house by saying "anything he wanted to hear." Reacting to something Kelly said, Grissom seemed like he was going to hit her, so she began screaming for help. At that point, Grissom punched Kelly five times in her chest, ribs, and solar plexus. In prior statements, Kelly had recounted that Grissom also grabbed her by the throat. Kelly fell to the ground and Grissom fled. At some point before assaulting Kelly, Grissom also damaged a wall heater inside the home.

Kelly was diagnosed with a bruised rib and prescribed a lidocaine patch for pain and a medical device to help her breathe. The emergency room nurse reported the suspected domestic abuse to police, who responded and took Kelly's statement. The

officers observed a bruise in Kelly's chest area, which was still visible when they took photos a week later.[3]

## C.    *Defense Case*

Grissom denied assaulting Kelly.  He stated that Kelly invited him in to watch a video but then accused Grissom of cheating and "blew up," waving a knife and screaming at him to " 'get the fuck out.' "  When Grissom opened the front door to leave, Kelly began screaming "help, help, help," while twice pushing Grissom's face into the screen door.  Grissom suffered cuts to his forehead and nose as a result.  Grissom admitted to hitting the wall heater "out of frustration" on his way out.

As to the audio recordings, Grissom admitted pushing Kelly on one prior occasion and "grabb[ing] her by her shirt" on another.  He explained that when he pushed Kelly, it was to move her out of the way because she was physically blocking him from leaving the room.  Grissom denied ever grabbing Kelly by the throat but clarified that he had grabbed her shirt after she made derogatory comments about his daughter.  Grissom otherwise denied punching, hitting, or strangling Kelly and explained his recorded admissions and failures to deny hurting Kelly as his either being "sarcastic" or instead trying to defuse the situation, end the argument, and "get out of there."  Grissom admitted having prior domestic violence convictions from "the '90[']s and 2007," and said that Kelly used the prior convictions as a weapon during their relationship, threatening to send him to jail.

Additional witnesses testified that they had never seen Grissom physically abuse Kelly but that Kelly was physically aggressive and verbally abusive to Grissom.  Some of these witnesses opined that Kelly was lying in this case because she is a vindictive

---

[3] The prosecution's case-in-chief also included the testimony of Richard Ferry, an expert on intimate partner violence and its effect on victims.

4

person.  In a fit of jealous rage, Kelly had once rammed a car belonging to Grissom's female friend.

The jury found Grissom guilty as charged.  At sentencing, the court declined Grissom's request to reduce the charge to a misdemeanor under Penal Code section 17, subdivision (b) but granted Grissom probation.  Grissom timely appealed.

## II.   DISCUSSION

On appeal, Grissom does not dispute that Kelly's account of prior uncharged acts of domestic abuse was admissible under section 1109.[4]  But because the admission of such uncharged acts remains subject to section 352, Grissom contends that the trial court erred in admitting the recorded conversations.  We conclude that the court acted within its discretion in admitting the recordings upon balancing the probative value of the recordings against any potential prejudicial impact. (*People v. Johnson* (2010) 185 Cal.App.4th 520, 531 (*Johnson*) [reviewing § 352 determination for abuse of discretion]; *People v. Montes* (2014) 58 Cal.4th 809, 859–860 [same].)

In considering whether exclusion was warranted under section 352, a trial court must balance " 'the probative value of the evidence . . . against four factors: (1) the inflammatory nature of the uncharged conduct; (2) the possibility of confusion of issues; (3) remoteness in time of the uncharged offenses; and (4) the amount of time involved in introducing and refuting the evidence of uncharged offenses.' " (*People v. Culbert* (2013) 218 Cal.App.4th 184, 192.)

---

[4] Section 1109 provides that "in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352." (§ 1109, subd. (a)(1).) Section 352, in turn, gives the trial court discretion to admit or exclude evidence upon balancing its "probative value" against "the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

5

Grissom first argues that the audio recordings were minimally probative. We disagree. Much of the trial centered on Kelly's credibility, which Grissom sought to undermine both through cross-examination and witnesses who came to court to opine about Kelly's purported dishonesty and motive to lie. In that context, the audio recordings—specifically, portions where Grissom admitted to pushing Kelly, grabbing her by the neck, and giving her bruises—tended to corroborate Kelly's testimony regarding the prior uncharged acts, as well as the charged incidents. (See, e.g., *People v. Thomas* (2023) 14 Cal.5th 327, 372–373 [rejecting § 352-based challenge to admission of crime scene photos upon finding that the photos "corroborate[d] and illustrate[d] the testimony of the [testifying] witnesses"].) And though Grissom now contends Kelly lacked sufficient independent recollection of the incidents detailed in the recordings, her testimony shows otherwise. While not recalling every detail, Kelly was able to provide relevant context for each prior act of abuse she and Grissom discussed, and to use the recordings as a springboard for testifying about additional prior incidents of abuse.[5] So we cannot say the trial court exceeded the bounds of reason in implicitly determining that the audio recordings had probative value beyond that of Kelly's testimony alone.

The court also acted within its discretion in finding that the probative value of the recordings was not " 'substantially outweighed' by [their] prejudicial impact." (*Johnson, supra*, 185 Cal.App.4th at p. 531.) While the most incriminating excerpts of the recordings included Grissom admitting to pushing Kelly, grabbing her throat, and giving her a bruise, these admissions are not "more inflammatory" than the conduct for which Grissom was on trial. (*Id.*, at p. 534, fn. 11 [noting that in assessing prejudice, "[c]ourts are primarily concerned where the past bad act was 'more inflammatory' than the offense for which the defendant is on trial"].) Indeed, Kelly testified that while Grissom had

---

[5] In any event, exclusion of the recordings would not have prevented the prosecution from using them to refresh Kelly's recollection, if needed. (§ 771.)

engaged in prior acts of abuse, he had "[n]ever" hurt her as badly as he did during the February 2021 incident. By the court's estimation, there were "30 minutes' worth of recordings," and Kelly's testimony about the prior acts took just over two hours. In the context of a four-day trial, where Kelly was the sole percipient witness to the charged conduct, this expenditure of time was not unreasonable. And despite some initial concern about jury confusion, the trial court followed through on its promise to "straighten . . . out" any such confusion by providing detailed jury instructions, including instructions on adoptive admissions and the predicate findings the jury must make before relying on evidence of prior uncharged conduct. And questions the jury posed during deliberations did not suggest that the jury was confused about what conduct it was being asked to render a verdict upon.

The trial court did not abuse its discretion in admitting the audio recordings under sections 1109 and 352. As this court explained in *People v. Jandres* (2014) 226 Cal.App.4th 340, 357, "[i]n general, 'the application of ordinary rules of evidence like Evidence Code section 352 does not implicate the federal Constitution.' " There being no violation of the rules of evidence, we need not address Grissom's additional claim that the putative section 352 error denied him due process.

### III.    DISPOSITION

The judgment is affirmed.

7

_____

LIE, J.

WE CONCUR:

_____

GROVER, Acting P. J.

_____

KULKARNI, J.*

*People v. Grissom*
H052002

---

      *Judge of the Santa Clara County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.